## COLEMAN v. NEWBY.

1. APPEAL, *under Code of* 1862, *dismissed for want of notice.* Order of the district court dismissing an appeal taken from a justice of the peace to the district court, as provided by §§ 104, 105, 106, chapter 121, Comp. Laws of 1862, because notice of the filing of the transcript was not served on the appellee as required by Rule 15 of the Supreme Court—affirmed by a divided court—(one of the justices having heard the case in the court below, and therefore not sitting, and the other two justices being divided in opinion.)

2. Per VALENTINE, J.: Said Rule 15 is wholly unauthorized and void. The mode of taking appeals is regulated and prescribed by statute. When the statute is complied with, the appellate court has jurisdiction of the action and of the parties, and must hear and determine the case.

3. ———— But if said Rule were valid, the appellee, by appearing and consenting to a continuance, *waived* the notice. Appeals are to be

favored; and mere technical defects or omissions are to be disregarded as far as possible without obstructing the course of justice.

## Error from Leavenworth District Court.

THIS case involves only the validity and proper construction of Rule 15 of the Supreme Court, adopted at the January Term, 1865, to be found in 2 Kas., page xii. Said rule is as follows:

"RULE 15. In cases of appeal from a judgment of a justice of the peace, or mayor, or recorder of a city or village, the appellant shall, within five days after the filing of the transcript of appeal in the district court, serve upon the appellee or appellees, his or their agent or attorney, notice in writing of the filing thereof. When the plaintiff appeals, he shall file his petition with the transcript; and when the defendant appeals, the petition shall be filed within five days after the service of the notice above mentioned. The demurrer, answer, and reply, shall be filed within such time thereafter as is or may be provided by law for the filing thereof in other cases after the return-day of summons. The day of the service of notice as aforesaid to be treated as such return-day." *

The proceedings in the court below were as follows: On the 8th of May, 1867, Josiah R. Coleman, as plaintiff, commenced an action of replevin against the defendant Thomas Newby, before a justice of the peace of Leavenworth county. On the 18th of June, the justice gave judgment therein against said plaintiff, from which on the 26th of June, he appealed to the district court. The transcript from the justice's docket was filed in the district court on the 30th of August, 1867, and the next

---

[ * THIS Rule was abrogated by the Supreme Court at the January Term, 1871. It had previously become inoperative by reason of the enactment of §§ 7, 8, 9, 10 and 11, of Ch. 88, Laws of 1870, providing a new mode of appeals from justices' courts, in which it is provided, by § 7, that "no notice of appeal shall be required to be filed or served." The appeal in this case was dismissed by the district court in September, 1868; and the case was heard here upon the law as it stood at the date of such dismissal.—REPORTER.]

term of the district court thereafter commenced on the 2d day of September, 1867. No notice in writing of the appeal was given the defendant or his attorney, as required by the fifteenth rule of the Supreme Court, adopted at the January Term, 1865, (2 Kas., xi, xii.) On the 27th of January, 1868, the district court, by *consent of the parties*, continued the cause to the next term of the court. On the 12th of June, 1868, and also on the 16th of September, 1868, the defendant, *Newby*, procured subpœnas to be issued for witnesses.

On the 28th of September, 1868, said defendant moved the court to dismiss the appeal for the reason that "no notice in writing" of the same had been given to appellee; which motion was by the court sustained, and the appeal dismissed, following the practice established by the cases of *Robitaille v. Ferguson*, and *Halford v. Coe*, 4 Kas., 556, 561. The plaintiff excepted, and to reverse such order of dismissal he brings the case by petition in error to this court.

*E. N. O. Clough*, for the plaintiff in error:

1. The object of notice on appeal is, that the opposite party shall not be surprised; that he may have time to prepare for trial. If the object to be attained, when notice is required, be otherwise effected, it is sufficient. 9 Minn., 234; 1 Mo., 607; 25 Ala., 298.

A party may waive any provision of the law which is designed especially for his benefit. 5 Kas., 277; 28 Ill., 80; 3 Grant's Cases, 97; 1 Oregon, 341.

The appearance of defendant, and consenting to a continuance, gives jurisdiction of the person; and if the court has jurisdiction of the subject-matter, the defects and irregularities in the process must be considered as

waived. 28 Mo., 319; 33 Ill., 525; 17 Wendell, 70; 15 Ohio, 483; 22 Conn., 106; 1 Ashmead, 168.

This is more especially the case when such party by his own act has made costs. He will be estopped from denying that he is properly in court. 15 Ohio, 483; 28 Ill., 80; 3 S. & R., 364.

2. Appeals are to be favored; and mere technical defects or omissions are to be disregarded as far as possible without obstructing the course of justice. 4 Wis., 223; 1 N. J., 431; 4 Blackf., 432; 15 Ill., 39.

Where an appeal from a justice's court had pended for several terms in the county court, before a motion to dismiss for irregularity in taking the appeal was made; held to have been such an acquiescence as waived the irregularity, and that the motion was properly refused. 7 Jones' Law, (N. C.,) 218; 32 N. H., 302.

The cases decided in this court at the May Term, 1868, 4 Kas., 556, 561, do not settle the point raised in this case, the point there attempted to be made being on the abrogation of Rule 15 by the changes in the Justice's act made by ch. 47, Laws of 1867; and the point in this case being that the party by his own acts has waived the notice required by rule fifteen.

No counsel for defendant in error.

*By the Court:*

BREWER, J., having heard the case in the court below, and therefore not sitting in the case in this court, and the other two Justices being divided in opinion, (KINGMAN, C. J., holding that the judgment of the court below should be affirmed, and VALENTINE, J., holding that it should be reversed,) the order of the court below, dismissing the appeal, is therefore *affirmed.*

Coleman v. Newby.

— The following opinion in favor of reversing the order dismissing the appeal, was filed by

VALENTINE, J.: The plaintiff's appeal was regular in every respect, except that the appellant gave "no notice in writing" of the appeal, as required by Rule 15, to the defendant. This rule is not an act of the legislature, nor a rule of the district court; but it is a rule of the Supreme Court, adopted by the Supreme Court at the January Term, 1865, for the government of the district courts. (2 Kas., xii.)

The first question is, whether the Supreme Court had any power to adopt any such rule? In this country it is universally acknowledged and insisted upon, that the people are the original source and fountain of all civil and political power; that neither the whole government, nor any department thereof, possesses any inherent power; that the people are sovereign, and the different departments of the government are simply agencies, through which the people exercise that sovereignty; and that all the power that can be exercised by any department of the government is merely delegated power which it derives from the people. The State government derives its powers from the people solely by virtue of the State Constitution. This constitution is the letter of attorney or chart of authority from the people to the government and to the different departments thereof. Hence, in order to ascertain what power is delegated to the government, and to each of its departments, we must look to the constitution itself.

The delegated power of the government is divided into three great branches, the legislative, the judicial, and the executive; and these three branches include all the

delegated power of the government. What is not dele-
gated, remains with the people: § 20, Bill of Rights.
The legislative power is delegated to the legislature;
(§ 1, Art. 2, Const.;) the judicial power to the judiciary;
(§ 1, Art. 3, Const.;) and the executive power to the ex-
ecutive officers of the government; (§§ 1, 3, Art. 1,
Const.) Under this grant of power it seems to be well
settled that it is the peculiar province of the legislature
to make the laws, of the judiciary to construe and ex-
pound them, and of the executive to execute and enforce
them. *Wayman v. Southard*, 10 Wheaton, 46; *Greenough
v. Greenough*, 11 Penn., 494; *Martin v. Hunter's Lessee*,
1 Wheaton, 304, 327 to 333; *Bates v. Kimball*, 2 D. Chip-
man, (Vt.,) 81, 88; *Dash v. Vankleck*, 7 Johns., 498, 508;
*Fletcher v. Peck*, 6 Cranch, 136; *Merrill v. Scherburne*, 1
N. H., 203, 204; *State of Penn. v. Wheeling*, 18 Howard,
440; *Osborne v. Bank*, 9 Wheaton, 866; Cooley on Const.
Law, 90; Blackw. on Tax Titles, 9, 10, 15.

The great weight of authority seems to be that these
three great powers or branches of power of government
—the legislative, the judicial, and the executive—are
distinct and separate from each other: (11 Penn., 494;
*De Chastellux v. Fairchild*, 15 Penn., 20; 2 D. Chipman,
87, 89; 1 N. H., 204; 18 How., 440; 16 Pet., 60, 61;
Blackw. on Tax Titles, 16, 17;) that they include all the
delegated power of the State; (§ 20, Bill of Rights;) and
that each is delegated to its appropriate department, and
can be exercised by no other department: (See authori-
ties above cited, and *Taylor v. Place*, 4 R. I., 354; *People
v. Draper*, 15 N. Y., 543; *Taylor v. Porter*, 4 Hill, 144.)
This latter proposition must be understood as subject to
the exceptions expressly enumerated in the constitution,
such as the trial of impeachments, etc. When the peo-
ple said in the language of the constitution, (§ 1, Art. 2,)

that " The legislative power of the State shall be vested in a House of Representatives and Senate," they meant *all* the legislative power.   If they did not, how much less did they mean ?   And did any of it go to the Supreme Court?

These three powers having each once been delegated by the people of the State to their respective departments, cannot again be delegated, but each must be exercised by the department to which it properly belongs. *Delegata potestas non potest delegari.*   *Bradley v. Baxter*, 15 Barb., 122; *Thorne v. Cramer*, 15 id., 112; *Barto v. Himrod*, 8 N. Y., 483; *Parker v. Commonwealth*, 6 Penn. St., 507; *Maize v. The State*, 4 Ind., 343; *Wayman v. Southard*, 10 Wheaton, 1, 42: *U. S. Bank v. Halstead*, 10 id., 51; *C. W. & Z. R. R. Co. v. Com'rs Clinton' Co.*, 1 Ohio St., 87; *Rice v. Foster*, 4 Harr., 479; *Santo v. The State*, 2 Iowa, 165, 203; *Geebrick v. The State*, 5 Iowa, 491.

While the legislature possess all the legislative power of the State, and while it is true that they cannot delegate any portion of that power to any other body, tribunal, or person, yet it is generally found impracticable for them to exercise this power in detail.   They may do so if they choose, or they may enact general provisions and leave those who are to act under these general provisions to use their discretion in filling up the details.   They may mark out the great outlines, and leave those who are to act within these outlines to use their discretion in carrying out the minor regulations. But even in this respect it is thought by Chief Justice MARSHALL that there is a limit to the power of the legislature.   (10 Wheaton, 43.)   For instance, the legislature may enact general provisions for the district court, and allow the district court to use its discretion in filling up the details; or they may enact general provisions for the

governor and allow him to use his dicretion in filling up
the details; but they cannot enact general provisions for
the district courts, or the governor, and authorize the
supreme court or any other body or person except the
district courts and the governor respectively to fill up
the details.   The legislature cannot authorize any person
to fill up details in an act under which such person will
never be called upon to act. · Nor can they authorize
any person to fill up details in any case in which they
do not themselves expressly ·enact all the outlines.   If
they should attempt any legislation of this kind it would
be an attempt to delegate legislative power to others, a
thing which they cannot do.   If the legislature should
confer upon the district court some particular jurisdic-
tion, for instance jurisdiction in *quo warranto*, and should
provide that the trial should be by · jury, but should
make no provision for drawing, summoning, or empan-
neling the jury, this omission would not deprive the
court of such jurisdiction which is expressly given; but
the court would have a discretion in drawing, summon-
·ing and empanneling the jury: (5 Kas., 222, 223;) and
would probably have power to adopt rules regulating
such discretion; but the supreme court could have no
power in such a case, to prescribe rules regulating the
discretion of the district court.   Whenever the legisla-
ture have occupied the whole ground themselves, and
supplied all the details as well as all the outlines, the
courts, or others acting under such laws, have no room
for the exercise of any discretionary power, but are con-
fined within the strict letter of the law.   And in such
cases it will hardly be contended that courts have any
authority to make rules even for their own courts,   Par-
ties to an action may in such cases claim as a matter of
strict right just what the law gives them, and courts are·

bound to give it to them. Whenever the law prescribes just what shall be done in a certain case, and the courts, by a rule, say that such thing shall not be done, or that something different shall be done, they attempt, by a rule, to repeal the law and to make a law themselves. It will hardly be claimed that where the court cannot dispense with the law in a single case, that it can, by a rule, dispense with the law in all such cases.

With reference to the case at bar, the legislature have enacted that a party shall have a good appeal if he file his appeal bond with the justice within ten days after the judgment is rendered, and file his transcript in the district court on or before the second day of the next term thereafter; (Comp. Laws of 1862, p. 634, §§ 103, 104, 105, 106;) and the district court has no discretion in the matter. It must simply obey the law. The legislature have chosen to occupy and cover the whole ground themselves, and to enact all the details as to how a party shall obtain a good appeal; and the party appealing, if he comply with the law, has a *right* to be heard, and the district court has no right, either with or without a rule, to say that he shall not be heard. The district court cannot by a rule repeal the law, nor enact another and more stringent law upon the same subject; and much less can the supreme court do so for the district court.

In any case it is only where the courts are clothed with discretionary powers, that they may make rules; and then probably only in a few cases, and for their own courts; for it may well be asked, if the legislature in its wisdom, and for the purpose that justice may be the better and more surely done, clothe the courts with certain discretionary powers, by what right can the courts by a rule limit that discretion, and thereby defeat the will of the legislature? It certainly cannot be done where the

legislature intend that the courts shall exercise their discretion upon the circumstances of each particular case, in contradistinction to a general discretion for all cases; for if the courts say that they will not so exercise their discretion, but will decide all cases alike, notwithstanding the differences of the circumstances, they virtually repeal and abrogate the law, and defeat the will and intention of the legislature, which is the soul and spirit of the law. Courts may in some cases exercise a degree of judicial discretion in the granting or refusing of a new trial; but has any body ever supposed that they could therefore make new rules for the granting or refusing of new trials? The reason is, that in such cases, the courts are required to exercise their discretion upon the circumstances of each particular case. Courts can probably never make rules except where they are clothed with a general discretion for all cases, in contradistinction to a special or particular discretion for each particular case; for instance, a court may by a rule, (where the statute is silent) fix an hour for meeting each day; or may set apart a certain hour each day, or a certain day each week, for the hearing of motions and interlocutory matters; or may fix certain days for trials by the court, and trials by jury, and trials of criminal cases, and trials of civil cases. But in all cases the rules of the court must be so liberal that the enforcement of them in any case will never operate as an abuse of judicial discretion. And in any case the power of the court to make rules is rather to be tolerated than encouraged. In any case the making of rules by a court even, (in the language of Justice McLEAN, 16 Peters, 60,) "in the use of a discretion essential to its existence," is not a judicial act, but is an act that borders very closely upon legislation. To declare what the law is or was, belongs to the judiciary, but to declare what it

shall be in the future belongs to the legislature. The judicial power of the State acts upon past conduct and declares what the law was at the time of the happening of the act complained of; the legislative power of the State prescribes the rule by which human conduct shall be governed in the future.

Courts can never in any manner make laws; neither by making rules for the government of future actions, nor by adjudications upon past actions or past conduct. "The judicial department has no will in any case. Judicial power contradistinguished from the power of the laws has no existence. Courts are the mere instruments of the laws, *and can will nothing.* When they are said to exercise a discretion it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and when that is discerned, it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the judge; but always for the purpose of giving effect to the will of the legislature; or in other words to the will of the law." (Per MARSHALL, C. J., in *Osborne v. U. S. Bank,* 9 Wheaton, 866.) "In the ordinary use of language, it will hardly be contended that the decisions of the courts constitute laws. They are at most only the evidence of what the laws are, and are not themselves laws. They are often reexamined, revised, and qualified by the courts themselves, whenever they are found to be either defective, or ill-founded, or otherwise incorrect. The laws of a State are more usually understood to mean the rules and enactments promulgated by the legislative authority thereof, or long established local customs having the force of laws." (Per STORY, J., in *Swift v. Tyson,* 16 Peters, 1, 18.)

Courts as judicial tribunals can never act at all, not

even judicially, except when called upon to do so by a
*party* in some judicial proceeding.   They can act only in
the decision of cases or in the decision of questions con-
nected with or arising in a case, and then there must be
parties plaintiff and defendant.   (*State of Penn. v. Wheel-
ing & Bel. Br. Co.*, 18 How., 440; *Osborne v. U. S. Bank,*
9 Wheaton, 819.)   *Ex parte* proceedings, and proceedings
for contempt of court, are apparent but not real excep-
tions to the last proposition.   While courts are limited
in their power to make rules for themselves, they can
never make rules for other courts.   It is true that courts
have not always observed this principle.   It is true that
courts have in rare cases attempted to adopt rules for
other courts.   But this fact militates but very little
against the truth of the principle.   The principle has
been seldom violated.   And when courts attempt to
make rules they very naturally act very much as the
legislature does under like circumstances.   They con-
sider more what law or rule ought to be made than their
power to make it.

But returning to the subject.   If the legislature says
that the district courts shall in certain cases be clothed
with certain discretionary power, where does the supreme
court get their authority to say that the district court
shall not be clothed with such discretionary power by
making rules limiting that discretion ?   It is not in the
nature of things for one court to exercise discretion for
another court; and if it cannot, who will say that it can,
as a judicial act or otherwise, make rules limiting or reg-
ulating the discretion of another court?   An attempt to
do so is an attempt to legislate.   It is claimed however
that the legislature have authorized the supreme court
to make rules for the district court; but this the legisla-
ture could not do if they would.   The making of rules is

not a subject of judicial power, as has already been shown; and the legislature cannot bring under the judicial power a matter which from its nature is not a subject for judicial determination. (*Murray v. Hoboken Land Imp. Co.*, 18 How., 284; *Auditor of State v. A., T. and S. Fe R. R. Co.*, 6 Kas., 500.) The said power to make rules is a legislative power, that has been once delegated by the people to the legislature, and cannot therefore be again delegated. The legislature could just as well confer power upon the governer, or upon a special commissioner, or upon any justice of the peace of the State, to make rules for the district court, as to confer such power upon the supreme court. The statute under which it is claimed that the legislature have conferred the power upon the supreme court to make rules for the district courts reads as follows:

"SEC. 612. The judges of the supreme court shall during the month of the first June after this code shall take effect, and every two years thereafter, meet at the capitol of the Territory [State,] and revise THEIR *general rules*, and make such amendments thereto as may be required to carry into effect the provisions of this code; and shall make such further rules consistent therewith as they may deem proper. The rules so made shall apply to the supreme court, the district courts, and the probate courts." Comp. Laws, 1862, p. 230.

It may well be doubted whether this section confers upon the supreme court the power that it is claimed that it does. It would be just as reasonable a construction of this section, to say that it simply confers power upon the judges of the supreme court, to make rules for their own court only, and such rules only as will apply to their own court, leaving the latter part of the section to make such rules applicable to the district courts and probate courts, if in their nature they can be made applicable to such courts. For instance: If there were appeals coming

from justices of the peace and other courts to the supreme court, in the same manner as appeals from justices of the peace to the district courts, then the supreme court, under the first part of the section, could make rules with reference to appeals for its own court, and the latter part of the section would make such rules apply to the district courts also. This construction however, would hardly make the section itself constitutional or valid : ( *Wayman v. Southard,* 10 Wheaton, 47, 48, 49, 50.) Rule 15 is not made for the supreme court at all, and can have no application to either the supreme court or probate courts, as the latter part of said section provides. It is a rule made for the district court alone. If said section 612 can be construed so as to authorize the supreme court to make rules of any kind for the district court, yet it certainly cannot be construed to authorize any such rule as this. The legislature had themselves already covered the entire ground with reference to appeals. They had left no discretion in the courts. They had already said what should constitute a good appeal, and no court in the State could say otherwise.

If said section will bear the construction claimed for it, then so far as it affects the district courts it was repealed by implication long before said Rule 15 was adopted. Said section was passed by the Territorial legislature in 1859, and was enacted for the old Territorial Supreme Court and District Courts, both of which had gone out of existence long prior to the time that this rule was adopted. When the State was admitted into the Union, the State Courts were organized with new powers and new jurisdiction. Said section however, was kept in force so far as it did not conflict with the State Constitution, and the laws made thereunder. The first State legislature passed an act entitled " an act to *organize*

and *define the jurisdiction* of the Supreme Court," approved
May 21st, 1861. This act provided that "the Supreme
Court shall have power to prescribe rules," for their own
court of course, "and change the same and provide for
their publication," (§ 2, ch. 66, Comp. Laws, 450,) with-
out giving to the supreme court any power whatever to
make rules for the district courts, and without making
the supreme court rules applicable to the district courts.
The same legislature in organizing the State district
courts gave the paramount and exclusive authority to the
district courts to make their own rules in the following
language: "The said district courts shall have *full*
"*power* to classify and distribute business therein, as may
"be necessary; *to make rules and regulations* for the prac--
"tice therein, until otherwise provided by law," etc.,
(Sec. 2, ch. 68, Comp. Laws, 454.) This act was approved
April 24th, 1861. It will be seen from these two
acts that the legislature never intended to give to the
supreme court of the *State*, the power claimed for it, or
the power that may possibly have been given to the
supreme court of the *Territory*.

The substance of Rule 15 was to require that the par-
ties should on appeals from justices of the peace, file new
pleadings in the district court, and to fix the time when
such pleadings should be filed. Before said Rule 15
was adopted, it was generally believed by the bench and
bar of the State that the law did not require that new
pleadings should be filed in the district court, although
it seems from the decision in the case of *Tarleston v.
Brily*, 3 Kas., 433, that they were mistaken. The "notice"
was required to be given so that the appellee would know
when to file his pleading. No other sufficient or adequate
reason can be given for requiring the notice. After said
Rule 15 was adopted by the supreme court the legisla--

ture repealed the substance of the rule by enacting that "No petition, answer, or other pleading, shall be neces- "sary in the district court in cases of appeal from justices "of the peace, when the amount in controversy is less "than one hundred dollars." (§ 9, ch. 47, Laws of 1867, p. 78.) The amount in controversy in this case was less than one hundred dollars; and when said rule was adopted justices of the peace did not have jurisdiction in cases where the amount in controversy exceeded one hundred dollars. When by the action of the legislature, the reason and grounds which gave rise to the rule were removed, the rule itself of course ceased to operate. *Cessante ratione legis cessat, et ipsa lex.* (Contra, *Robitaille v. Furguson,* 4 Kas., 556.) The construction given to this rule in the court below was a very strict and rigid construction. A rule of the court at best is not a law. A rule must always be liberally construed, so as to promote justice, and never strictly or rigidly construed so as to defeat justice. A rule is not to be inflexibly adhered to like a law, nor is it entitled to the same respect by the courts. If in any case the operation or the enforcement of a rule should work injustice, its operation for that case must be suspended. Besides, the notice required by this rule is not for the purpose of giving the court jurisdiction, for the court on an appeal has as complete jurisdiction over both the parties and the subject matter of the action, and as ample authority to hear and determine the case without the notice as with. (3 Kas., 436; 5 Kas., 277.) The notice is only for the purpose of giving *actual* notice to the appellee of a fact of which the law conclusively presumes that he already has *constructive* notice. Failure to comply with the rule in this respect should therefore not be governed by the rigid and inflexible rules relating

to summonses, and to notices which are required for the purpose of giving the court jurisdiction. When the appellee made a general appearance in this case in the court below, and consented to a continuance of the case, he waived the notice. The court could then see that the appellee not only had constructive notice of the appeal, but he also had actual notice thereof. He had all that this over-precautionary rule required that he should have. Even if this rule had been established by law, and even if the notice required by it were necessary to give the court jurisdiction of the case, still the appearance of the defendant in the court below was a *waiver* of the notice, and would have given the court jurisdiction to hear and determine the case. The appeal should not have been dismissed, and the judgment of the court below ought therefore to be reversed.