No. 29,455.

In the Matter of THE VERDIGRIS CONSERVANCY DISTRICT, Petitioners, *Appellants,* v. OBJECTORS, *Appellees.*

(289 Pac. 966.)

Opinion filed July 5, 1930.

*LeRoy Bradfield,* of Neodesha, *Dallas W. Knapp,* of Coffeyville, *Thomas E. Wagstaff* and *Jay W. Scovel,* both of Independence, for the appellants.

*Fred S. Jackson, James E. Smith,* both of Topeka, *T. C. Forbes, Carl C. Chase* and *C. C. Carper,* all of Eureka, for the appellees.

*W. D. P. Carey,* of Hutchinson, as *amicus curiæ.*

.The opinion of the court was delivered by

BURCH, J.: This appeal is taken from an order dismissing a petition for incorporation of the Verdigris conservancy district under the conservancy act of Kansas (Laws 1929, ch. 176). The principal question is whether the act is constitutional.

The act provides a comprehensive scheme for prevention of and protection against floods through the agency of public corporations known as conservancy districts. A proceeding to organize a conservancy district may be initiated by filing a petition in a district court. Organization is effected by a judicial declaration to that effect, based on findings made after notice and hearing. Portions of the statute follow:

"SEC. 2. *District court to organize districts.* The district court of any county in this state, or any judge thereof in vacation, is hereby vested with jurisdiction, power and authority to find the conditions stated in the third section of this act where the petitioners seek to organize conservancy districts, which may be entirely within, or partly within and partly without, the county in which said court is located, for all or any of these purposes: (*a*) of preventing floods; (*b*) of regulating stream channels by changing, widening and deepening the same; (*c*) of reclaiming or of filling wet and overflowed lands; (*d*) of providing for irrigation where it may be needed; (*e*) of regulating the flow of streams; (*f*) of diverting, or in whole or in part elimi-

nating, watercourses; and incident to such purposes and to enable their accomplishment, to straighten, widen, deepen, change, divert or change the course or terminus of any natural or artificial watercourse; to build reservoirs, canals, levees, walls, embankments, bridges or dams; to maintain, operate and repair any of the construction herein named; and to do all other things necessary for the fulfillment of the purposes of this act.

"SEC. 3. *Petition.* . . . The petition shall set forth: *First:* The proposed name of said district. *Second:* Stating the facts showing that the area within said proposed district have been and are likely to be inundated or damaged by flood waters, either as to land or property; or that in said area or portion thereof there are lands exceeding 160 acres which ought to be reclaimed; or that stream channels should be changed, widened or deepened; or that provision should be made for the irrigation of lands within said proposed district; or that the flow of the streams in said proposed district should be regulated; or that watercourses in said proposed district should be diverted or eliminated in whole or in part; or that it is necessary to build reservoirs, canals, levees, walls, embankments, bridges or dams to protect and preserve property; and that the necessity of the proposed work described in said petition exists, and that it will be conducive to the public health and safety, convenience and welfare. . . .

"SEC. 5. *Notice of hearing on petition.* Immediately after the filing of such petition the clerk with whom such petition is filed shall cause notice by publication (form 1, schedule) to be made of the pendency of the petition and of the time and place of the hearing thereon.

"The court of the county in which the petition was filed shall thereafter, for all purposes of this act, except as hereinafter otherwise provided, maintain and have original and exclusive jurisdiction coextensive with the boundaries and limits of said district and of lands and other property proposed to be included in said district or affected by said district, without regard to the usual limits of its jurisdiction.

"SEC. 6. *Hearing on petition; organization of district.* . . . Upon the said hearing, if it shall appear that the facts stated in the petition are true and that the purposes of this act would be subserved by the creation of a conservancy district, the court shall, after disposing of all objections as justice and equity require, by its findings, duly entered of record, adjudicate all questions of jurisdiction and facts, declare the district organized, and give it a corporate name, by which in all proceedings it shall thereafter be known, and thereupon the district shall be a political subdivision of the state of Kansas, a body corporate with all the powers of a corporation. . . .

"In case of a district lying in more than one county one district judge of each of the counties having land in the district shall sit as a court in the courthouse where the original petition was filed, to make the findings required by this section and by section 12 herein. The majority of said judges shall be necessary to render a decision. In case of a tie said judges shall call in a judge from an adjoining district, and such judges shall immediately hear and determine said matter.

"SEC. 8. *Appointment of directors.* Within thirty (30) days after entering

the decree incorporating said district the court shall appoint three (3) persons, at least two (2) of whom shall be resident freeholders within the district, as a board of directors of the district. . . .

"In case of a district lying in more than one county appointments of directors under this section, and of appraisers under section 25 of this act, shall not be effective until approved by a majority of the judges constituting the court provided for in section 6 of this act.

"Sec. 12. *To prepare plans.* Upon their qualification, the board shall prepare or cause to be prepared a plan for the improvements for which the district was created. . . .

"After said hearing before the board of directors the board shall adopt a plan as the official plan of the said district: *Provided,* That before final adoption of the official plan the same shall have had the written approval of the chief engineer of the division of water resources, whose duty it shall be to pass upon the feasibility of the plan, its proper adaptation to a general plan for the stream system of which it may be a part, as well as the safety of the works to be constructed, and until such approval shall have been received such official plan may not be adopted. If, however, any person or persons object to said official plan so adopted, then such person or persons may, within ten (10) days from the adoption of said official plan, file their objections in writing, specifying the features of the plan to which they object, in the original case establishing the district in the office of the clerk of said court, and he shall fix a day for the hearing thereof before the court, not less than twenty (20) days nor more than thirty (30) days after the time fixed for filing objections, at which time the judges, sitting as a court as provided for in section 6 herein, for the organization of the district, shall meet at the courthouse of the county where said original case is pending, and hear said objections, and adopt, reject or refer back said plan to said board of directors. A majority of the judges shall control, and in case of a tie shall proceed as provided in section 6 herein." (Laws 1929, ch. 176.)

In this instance the petition prayed for organization of a conservancy district comprising the flood plain of the Verdigris river and its tributaries, Fall river and Elk river, in the counties of Elk, Greenwood, Montgomery, Wilson and Woodson. The petition was filed in Wilson county. On the day appointed for the hearing the following district judges appeared at the courthouse in Fredonia: Honorable Shelby C. Brown, judge of the district court of Wilson county, seventh judicial district; Honorable Allison T. Ayres, judge of the district court of Elk county and of Greenwood county, thirteenth judicial district; Honorable Frank R. Forrest, judge of the district court of Woodson county, thirty-seventh judicial district; Honorable Joseph W. Holdren, judge of the district court of Montgomery county, fourteenth judicial district. Petitioners and objectors appeared by attorneys and many objections to a hearing were inter-

posed. The judges sat as if they constituted a court, and after due deliberation they reached the conclusion the act is void. For the sake of a record, conclusions were stated in writing, and a formal order dismissing the petition was entered.

The first question which obtrudes is, What was the nature of the convention of judges which the statute calls a court?

Section 1 of article 3 of the constitution reads as follows:

"The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law; and all courts of record shall have a seal to be used in the authentication of all process."

Therefore the legislature had power to create a court, inferior to the supreme court, and to confer upon it such judicial authority as the legislature desired. The legislature could not, however, create a conservancy court, having judicial power, composed of judges of several judicial districts. While there may be more than one district judge in a district, the office of judge of a district court is a constitutional office, and a judge of a district court is expressly prohibited by the constitution from holding any other office of profit or trust under the authority of the state. (Constitution, art. 3, § 13.)

The constitution provides that the state shall be divided into judicial districts, in each of which there shall be elected, by the electors thereof, a district judge, who shall hold office for a stated term (art. 3, § 5). The original number of judicial districts was five. The legislature was authorized to increase the number, new districts to be formed of compact territory bounded by county lines (art. 3, § 14). This power has been exercised and the number of districts is now thirty-six. Provision was made for attaching new or unorganized counties to judicial districts for judicial purposes (art. 3, § 19). The legislature was directed to provide by law for the selection of a *pro tem.* judge of the district court when the judge is absent or otherwise unable or disqualified to sit in any case (art. 3, § 20). Sections 6 and 16 of article 3 read as follows:

"The district courts shall have such jurisdiction in their respective districts as may be provided by law."

"The several justices and judges of the courts of record in this state shall have such jurisdiction at chambers as may be provided by law."

Chambers is a place in which a judge holds hearings, makes orders, signs papers and does other business pertaining to his office as judge of his district when he is not holding a session of court.

(Black, Law Dictionary.)   Jurisdiction to organize a conservancy district is conferred on the court and not on any judge or aggregation of judges at chambers.

It is manifest from the territorial organization of the judicial branch of the government which has been described that judicial business is to be done in judicial districts, by district courts and district judges acting within and for their respective districts; and a judge of the district court chosen for district A cannot be empowered to transport his judicial authority to district B and exercise his authority there, any more than he could be empowered to exercise the functions of judge of district B, in district B, while the judge of district B is present and qualified to act.   The result is that when Judges Ayres, Forrest and Holdren left their judicial districts and went to Judge Brown's district they were without judicial authority there.   They could not act as judges of the district court of Wilson county, with power to overrule Judge Brown, or act in any other judicial capacity, and the provision in the conservancy act for a conservancy court consisting of more than one judge is void.

The conservancy act of the state of. Ohio (Laws 1914, p. 13) served as a model for the conservancy act of Kansas.   Section 6 of the Ohio law contains a provision that in case of a district lying in more than one county one common-pleas judge of each county having land in the district shall sit as a court to make the findings essential to a decree incorporating a conservancy district.   The legislature of this state overlooked the fact that the constitution of the state of Ohio was amended in 1912 by insertion of a provision that a judge of a court of common pleas may hold court in any county, and authorizing the chief justice of the supreme court of the state to assign any judge to any county to hold court therein. (Ohio Constitution, art. 4, § 3.)

The legislature inserted the following section in the Kansas act:

"In case any section or sections or part of any section of this act shall be found to be unconstitutional, the remainder of the act shall not thereby be invalidated, but shall remain in full force and effect."   (Laws 1929, ch. 176, § 69.)

Striking out the provision for a conservancy court of more than one judge, there is left the district court of Wilson county.   That court had no power to proceed because the power conferred by section 3, except with respect to the finding of public purpose, is legislative and not judicial.

The question whether a drainage project will be conducive to the

public health, safety, convenience and welfare to such an extent that it is a matter of public concern, and not merely a matter of private advantage, is ultimately a judicial question, just as the question whether a taking of property under power of eminent domain is for a public use is ultimately a judicial question. A finding of public purpose does not, however, carry us very far, and whether a proposed improvement would be of public rather than private benefit is a very different question from the question whether the work should be undertaken. (*Shreves v. Gibson*, 76 Kan. 709, 92 Pac. 584.) Whether the work shall be undertaken is purely a legislative question which no judicial tribunal is authorized to decide.

Suppose the statute authorized a petition to the district court of Wilson county to organize a township. The court might say the public welfare would be promoted, but it could not create the township, because that requires exercise of political power. (*Fulkerson v. Comm'rs of Harper Co.*, 31 Kan. 125, 1 Pac. 261.). The same is true with respect to organization of a drainage district, which is merely another kind of political subdivision of the state (§ 6).

With an insatiable hankering to involve the courts in legislative business, the legislature has resorted to an expedient of this kind: The courts have judicial power to establish facts. So when a legislative end is to be attained a court is called on to find whether facts A, B and C exist. If the court finds the enumerated facts it is the legislative will that a legislative result shall follow. The subject was considered at length in the recent cases of *Ruland v. City of Augusta*, 120 Kan. 42, 242 Pac. 456, and *State, ex rel., v. Drainage District*, 123 Kan. 191, 254 Pac. 372.

Section 6 of the act provides for a declaration of incorporation if the court shall find the facts alleged in the petition provided for in section 3. Turning to section 3, the court could find as a fact whether the drainage district area had been and was likely to be inundated or damaged by flood waters; but the court could not find, for example, that there are 160 acres within the area which "ought to be reclaimed." This lack of power is not cured by the language of the statute prescribing contents of the petition, "stating the facts showing . . . that in said area or portion thereof there are lands exceeding 160 acres which ought to be reclaimed." Suppose the petition should state there are 160 acres of swamp land having the usual characteristics of such land, and reclaimable by construction of a ditch of a certain width, depth and length, at an

approximate cost—that would not show the tract or tracts ought to be reclaimed, because, whatever the conditions, "ought" involves political expediency.

The decision in the case of *State, ex rel., v. Drainage District,* 123 Kan. 191, 254 Pac. 372, makes the distinction between adjudication and legislation clear. The statute there considered required a finding of existence of a tract of swamp or overflowed land having an area of 160 acres or more. The court could make that finding—but what of it? The statute then proceeded to declare the legislative will:

"The fact that said district shall contain 160 acres or more of wet, over-flowed or submerged lands shall be sufficient cause for declaring the public utility of said improvements, and shall be sufficient grounds for declaring said organization a public corporation of this state." (R. S. 24-603.)

Even this statute was of questionable validity, but a majority of the court saved it by holding the district court should make an order of incorporation if the required facts were found.

In this instance the petition is not required to state issuable facts, such as existence of a stream channel of certain dimensions, draining a territory of a certain area, in which such quantities of water periodically fall that floods result. The petition is to state facts which make an appeal to legislative policy, and the court determines that policy by finding whether stream channels should be changed, widened or deepened, whether irrigation projects should be instituted, etc.

The statute is filled with provisions for the performance of purely administrative duties by the court, but it will be sufficient to direct attention to a single one. Turning to section 12, it will be observed the first thing the board of directors of a conservancy district must do after organization of the district is to prepare plans for the improvements for which the district was created. After an official plan is adopted it is executed accordingly, except that it may be altered in detail before the assessment roll is filed. Written objections to the plan may be filed, and after notice the objections are heard by the board of directors. The section continues as copied above (§ 12). It is perfectly manifest that this section requires the court to act in the capacity of superengineer of the conservancy enterprise.

Reference has been made to the subject of casting administrative duties on the court merely to show the utter disregard of settled **principles of constitutional law** of this state in framing the statute.

Attempt was also made to confer purely legislative power on the court other than the legislative power to incorporate. It is not necessary to go through the forty printed pages of the statute to see what would be left of it if, pursuant to section 69, the void provisions were stricken out. The special purpose of the statute was to authorize conservancy projects of great magnitude. Elimination of the composite court eviscerates the act; but assuming the purpose of the act might still be accomplished by utilizing the district court of a county, no district court has power to make a declaration of incorporation of a conservancy district, whether the district comprise one or more counties, because the grant is not of judicial power, but of legislative power.

The appeal is dismissed.