No. 41,499

STATE OF KANSAS, ex rel. JOHN ANDERSON, JR., Attorney General, *Plaintiff*, v. THE STATE OFFICE BUILDING COMMISSION OF THE STATE OF KANSAS, and JOHN W. CASEBEER, JOHN O. ADAMS, CARL S. McCLUNG, ALVIN BAUMAN, F. O. DOTY, AMBROSE DEMPSEY and WADE M. FERGUSON, as Members of the State Office Building Commission of the State of Kansas, *Defendants*.

(345 P. 2d 674)

Opinion filed November 7, 1959.

*John Anderson, Jr.*, Attorney General, argued the cause and *A. K. Stavely*, Assistant Attorney General, and *Robert E. Hoffman*, Assistant Attorney General, were with him on the briefs for the Plaintiff.

*Clayton E. Kline* and *Warren W. Shaw*, both of Topeka, argued the cause and were on the briefs for the Defendants.

The opinion of the court was delivered by

JACKSON, J.: This is an original action of quo warranto in which the attorney general appears on behalf of the state to test the validity of one section of the statute, as amended, creating the defendant State Office Building Commission. The plaintiff challenges only the section providing for the appointment of the defendant commission as it was amended in 1953, and now appears in G. S. 1957 Supp. 75-3601. The contention is that since the section provides that only members of the legislature may be appointed by the governor to the commission, the statute is invalid under the state constitution as a violation of the provisions of the constitution providing for a separation of the powers of the executive, legislative and judicial departments of the state government. Plaintiff's contentions are set out in his amended petition filed with this court.

The defendants by proper denials in their answer put in issue only the question of law as to whether section 75-3601 violates the constitution.

The defendant commission was first created by L. 1945, ch. 314, at the time the present new state office building was in the proposal stage. The act was amended by L. 1947, ch. 428 to give the commission greater power. The act with the 1947 amendments appears in G. S. 1949, Chap. 75, Art. 36. This version of the statute was again amended by L. 1953, ch. 395, and these amendments appear in G. S. 1957, 75-3601 et seq. Section 75-3601, which is the only section questioned by the attorney general, reads as follows:

"There is hereby created a state office building commission which shall consist of seven members to be appointed by the governor. Only members of the legislature shall be appointed and serve as members of said commission except they shall be eligible to serve out the term for which they are appointed even though they shall cease to be members of the legislature but the members of said commission who are members of the legislature shall not be entitled to receive any salary or compensation as such members under the provisions of this act during any regular or special session of the legislature. Each member of the commission shall serve for a term of four years. A vacancy for any reason shall be filled in the same manner as original appointments are made. All vacancies caused by this amendment shall be filled by appointment of the governor within thirty (30) days after this act takes effect."

Until the amendment in 1953, members of the legislature *might* be appointed to the commission and all members served at the

pleasure of the governor. The constitutionality of the composition of the commission as created prior to 1953 was not tested by any proceeding in court. It will be noted from the above text of the section that it is now provided that at the time of appointment all members of the seven member commission must be members of the legislature, and that members are appointed for terms of four years. The validity of the section prior to 1953 is of course not an issue in this case.

The decision in this case must turn upon the answers to be given to a few fundamental questions. These questions may be stated as follows: First, what is the nature of the powers of the defendant commission? The attorney general contends that these powers are not legislative in any degree, but are purely executive and administrative powers.

If plaintiff be correct in the first proposition, then we must examine a second question. That question may be stated as being, do we find the constitutional principle of the separation of the powers of the executive, legislative and judicial departments of the state government provided for in the constitution of this state?

If the second question be answered in the affirmative, a third and final question must be determined. May members of the legislature hold executive office under the state government during the term for which they have been elected to the legislature?

## I.

The powers of the defendant commission are set out in the act as amended and are to be found in the General Statutes and the Supplement thereto following section 75-3601. Plaintiff's brief has summarized these powers as follows:

"1. To construct and equip a state office building on the tract now occupied by that structure. 2. To sue and be sued and to make all contracts necessary and convenient for the accomplishment of its authorized purposes and for the carrying on of its business. 3. To accept gifts and grants and to contract with the federal agencies in connection therewith. 4. To borrow money and issue evidences of indebtedness in the name of the state of Kansas, and to secure payment thereof or of any or all obligations of the Commission by pledging all or any of its revenues. 5. To select aand determine the number of its employees and their compensation and duties. 6. To permit the use of the office building by any state agency selected by the Commission; and to fix and charge such rentals therefor as it may determine to be necessary to pay the expenses of the Commission, the construction and equipment of the building and payment of the principal and interest on its obligations allocable to such building. 7. To rent unoccupied space in said building to others on month to

month leases. 8. To acquire a parking lot and improving the same from the state office building fund, raze buildings on said property, regulate parking on said lot, fix and collect charges therefor, and to make rules for the removal and impoundment of vehicles unlawfully parked thereon. 9. To take title to and hold the parking lot real estate and to take title to and hold under and as against the state the interest of the state to the office building site."

A standard and often used definition of legislative power is found in 16 C. J. S. 545, § 130:

"As a general rule, under constitutional principles with respect to the division of powers, legislative power as distinguished from executive power is the authority to make laws, but not to enforce them."

By the above standard or by any other standard known to us, the above powers of defendant commission must be said to be executive powers. We cannot find that this construction of the nature of the powers of defendant commission is disputed in defendant's brief.

Rather the first proposition in defendant's brief is that the instant case is controlled by the decisions in *State, ex rel., v. Kansas Turnpike Authority*, 176 Kan. 683, 273 P. 2d 198, and *State, ex rel., v. Fadely*, 180 Kan. 652, 308 P. 2d 537. As to this contention, we cannot agree.

In the Turnpike case, the court said on page 695:

• "While the legislature cannot interfere with nor exercise any powers properly belonging to the executive, it may engage in activities which may properly be regarded as incidental to and within the scope of its legislative duties, and it is not an encroachment on the executive for the legislature to create a commission and to designate its members to perform delegable legislative duties. See 16 C. J. S. pg. 332, *et seq.*"

The true meaning of the decision of the majority of this court in the Fadely case can be gleaned from the quotations set out below. In the concurring opinion of Mr. Justice Schroeder, which was concurred in by Mr. Chief Justice Parker and Mr. Justice Price, it is said:

"It is true that the legislative department of our government may not operate in the executive department to execute laws, but it is clear that the legislative department may cooperate, investigate, study, research, recommend and enact laws. The specific enactments, as limited by the scope of this action, challenged before this court fall in the realm of *cooperation* on the part of the legislature and do not attempt to usurp functions of the executive department of the government.

"The statutory enactments under constitutional attack, when construed in accordance with the rules set out in *Hunt v. Eddy*, supra, and the cases following as herein cited, clearly indicate no violation of the separation of powers inherent in our state constitution, there being no usurpation by one department

of the powers of the other on the specific facts and circumstances presented in this action." (p. 697.)

In the specially concurring opinion of Mr. Justice Robb is found the following language:

"I would be inclined to join in the dissent were it not for that long line ot decisions of our court following the almost universal rule that an act of the legislature is presumed to be constitutional unless it contravenes an express inhibition of the constitution or one necessarily implied from some express affirmative provision of that instrument." (p. 698.)

The specially concurring opinion continues with the citation and discussion of several Ohio decisions to the effect that if the powers exercised by the legislature could be said to be "quasi legislative," the statute should be upheld by the court.

It must be noted from the foregoing opinions, that the Turnpike case and especially the Fadely case were extremely borderline decisions. They do not control the present case because here the powers of the defendant commission are purely executive powers.

## II.

Perhaps, in view of the above quotations from the Turnpike and Fadely cases, a full discussion of the principle of the separation of the powers of government under our state constitution is unnecessary. It must be apparent that the court in those cases did not hold that the legislature could usurp the powers of the executive department under the constitution. However, in view of the earnest argument in defendant's brief we proceed to a short examination of the constitution of the state of Kansas.

It has been said that our constitution was modeled after the constitution of Ohio. Be that as it may, the similarity of draftsmanship between the federal constitution and our state constitution can not be a happenstance.

In the first article of the federal constitution, all legislative power is conferred upon congress. In the second article of the state constitution, all legislative power is conferred upon the legislature. We shall not speculate as to why the legislature was relegated to the second article of the state constitution.

In the second article of the federal constitution, the executive power is vested in the President. In the first article of the state constitution all executive power is vested in the governor and other constitutional executive officers.

In the third article of both federal and state constitutions the

judicial power of the government is vested in the constitutional courts of the government.

The defendant states that the only prohibition against state officers holding other offices is to be found in Art. 3, sec. 13, relating to the judiciary. The argument apparently continues that the people of the state hold all power not conferred upon the federal government under the federal constitution (see Tenth Amendment to the United States Constitution). Defendant says there is a difference between the state government and the federal government and the legislature is the repository of these reserve powers. The argument is condensed as follows on page 26 of defendant's brief:

"In other words, the state, through the legislature, may exercise any power not granted to the federal government and not prohibited by the state constitution."

We fear that defendant has overstated the proposition. It is the state or the people thereof to whom the power not granted to the federal government is reserved. Under the state constitution, the only power granted by the people to the legislature in Article 2 *is legislative power*. The legislature may exercise all legislative power possessed by the state, but can the legislature provide that its members may exercise executive or judicial power? If so, then under our constitution the legislature may change the government of this state to one which will conform to the government of the United Kingdom. There the actual chief executive officer is the leader of the majority party in the House of Commons. Furthermore, the supreme court of the nation and empire is the judiciary committee of the House of Lords.

It may be noted that the cases cited by defendant commission do not bear out the contention made in its brief.

In *Leavenworth Co. v. Miller*, 7 Kan. 479, 2nd Ed. star pages, the court said at page 491:

"We can see no possible application that can be made in this case of section 20, bill of rights. It will be admitted that without that section the legislature cannot exercise any power retained by the people or not delegated by the people to the legislature, and that is all that can be claimed with the section."

Again at page 501 of the above opinion, the court said:

"As the people have by the constitution clothed the legislature with all the legislative power of the state, the first great question is, what is 'legislative power'? This may be answered by saying that it is the power to make the laws. But then the question, equally difficult, arises, what is a law? This may be answered by saying that it is a rule of civil conduct prescribed by the supreme power of a state, which, under the constitution, and for this

purpose, is the legislature; and still we are left as much in the dark as we were before. Some things, we know, come within the scope of legislative power. Other things we know do not. But we have no rule by which we can always determine accurately and precisely whether a given thing comes within the scope of legislative power or not. Hence the difference of opinion we find among eminent jurists."

Still later, on pages 507 and 508, the opinion in the Miller case continues:

"We suppose that nobody will claim that the territorial legislature had more power in this respect than the state legislature. The territorial legislature had nothing but legislative power, and that is just what the state legislature have. The territorial legislature held their authority under the 'organic act,' which provides 'that the legislative power and authority of said territory shall be vested in the governor and legislative assembly' Section 22. The state legislature hold theirs under the state constitution. The organic act was framed by congress; the constitution was framed by the people of the state. The territorial legislature had all the legislative power in this respect that congress had power to give them. The state legislature have all the legislative power that the people of the state have power to give them."

There can be no question but that this court has always held that the legislature has *all legislative power* possessed by the state under our system of federal government. But defendants have failed to note that it is *only legislative power* which is conferred upon the legislature by the state constitution. There is no grant of executive power or of judicial power to the legislature. Those powers are granted to other departments of the state government by the state constitution, and the executive department and the judicial department represent the people of the state in the use of those powers just as the legislature does in its exercise of legislative power.

If the above propositions be true, and we earnestly believe them to be, the legislature of either the federal government or of the state of Kansas may not pass legislation conferring upon the legislature executive or judicial power. A brief inspection of the history down through the years and of decided cases under both constitutions shows that statesmen and lawyers have up to this time understood the above propositions to be the basis for the doctrine of separation of powers as that principle exists in the American system of government, first created by the constitutional convention of 1787.

Turning first to the material on the federal constitution, which we have shown to be almost identical to the Kansas constitution as to

the principle of separation of powers, we find that in the constitutional convention the principle of separation of powers was discussed and fully understood. A most readable discussion of the action of the constitutional convention opening in May, 1787, is found in the recent work of Hart and Wechsler, *The Federal Courts and the Federal System,* pages 13 to 16, inclusive. Liberal citations to Warren, *The Making of the Constitution* and to Ferrand, *The Records of the Federal Constitution* are found in the first cited work, if a more primary source is desired. Hart and Wechsler point out that on numerous occasions it was proposed that the supreme court, or certain members thereof, should be given power "to examine every act of the National Legislature before it shall operate." It is further shown that one of the prime reasons for the defeat of this proposal in all forms, and the substitution in its place of the president's power of veto was that to give the court such power would violate the principle of separation of powers between the departments of the government. It is further shown that at all times it was taken for granted that the supreme court would have power to hold statutes, both federal and state, unconstitutional for violating the federal constitution, when such statutes might come before the court in judicial "cases and controversies" as provided in Article 3 of the federal constitution. This last proposition is important since it lays to rest a popular concept that the framers of the constitution did not foresee the right of the court to declare statutes invalid.

In further considering the history of the federal constitution, it may be noted that the Federalist Papers deal with the matter of separation of powers in the proposed federal government and in the states as well. Papers numbers 47 to 51, inclusive, deal with this proposition. The first two of the series were written by James Madison and the last three by Alexander Hamilton. Both Madison and Hamilton were in complete agreement as to the proposition that the constitution, which they had been most influential in framing, provided for the separation of the powers of government between the three departments with a few exceptions spelled out in the constitution, such as the presidential veto power. We quote the following from Hamilton's last paper on the subject:

"If the principles on which these observations are founded be just, as I persuade myself they are, and they be applied as a criterion to the several state constitutions and to the federal constitution, it will be found, that if the latter does not perfectly correspond with them, the former are infinitely less able to bear such a test.

"There are moreover two considerations particularly applicable to the federal system of America, which place it in a very interesting point of view.

"*First.* In a single republic, all the power surrendered by the people, is submitted to the administration of a single government; and the usurpations are guarded against, by a division of the government into distinct and separate departments. In the compound republic of America, the power surrendered by the people, is first divided between two distinct governments, *and then the portion allotted to each subdivided among distinct and separate departments.* Hence a double security arises to the rights of the people. The different governments will control each other; at the same time that each will be controlled by itself." (Italics ours.)

Of course, it may be observed that not only the framers of the federal constitution but the Supreme Court of the United States has consistently adhered to the proposition that the federal constitution, drawn on the same plan as the state constitution, provided for a separation of powers (*Kilbourn v. Thompson,* 103 U.S. 168, 26 L. Ed. 377; *Keller v. Potomac Elec. Co.,* 261 U.S. 428, 67 L. Ed. 731, 43 S. Ct. 445; *Muskrat v. United States,* 219 U.S. 346, 55 L. Ed. 246, 31 S. Ct. 250).

In the Thompson case, the court held congress had no *judicial* power under the constitution. In the Keller case, it was decided that under Art. 1, Sec. 8, clause 17, congress could provide that the courts of the District of Columbia might exercise administrative power since under the aforementioned clause congress had power to create a government for the district and to provide for such courts, but that the supreme court could not review such a decision of a court of the district since the supreme court *had only been vested with judicial power over cases and controversies by the constitution.* In the Muskrat case, it was held that congress might confer upon a legislative court, the Court of Claims, power to give an advisory opinion, but the supreme court had no such power under the constitution.

Turning now to the state constitution, we find that the framers of that constitution understood perfectly that by a division of the powers granted to the different departments of government, they had created a government in which the well-known American system of separation of powers existed (Wyandotte Convention of 1859, p. 128 to 130, inclusive).

All of the decisions of this court including all of the opinions in *State, ex rel., v. Kansas Turnpike Authority* and *State, ex rel., v. Fadely,* both supra, have taken for granted that the rule of separation of powers between the three great departments of the state

government was inherent in our constitution. Some of the other cases may be cited, although most of them were referred to in the opinions of the Turnpike and Fadely cases: *Coleman v. Newby*, 7 Kan. 82; *In re Sims*, Petitioner, 54 Kan. 1, 37 Pac. 135; *In re Davis*, 58 Kan. 368, 49 Pac. 160; *In re Huron*, 58 Kan. 152, 48 Pac. 574; *State v. Johnson*, 61 Kan. 803, 60 Pac. 1068; *State v. Railway Co.*, 76 Kan. 467, 92 Pac. 606; *Hicks v. Davis*, 97 Kan. 312, 154 Pac. 1030; *Ruland v. City of Augusta*, 120 Kan. 42, 242 Pac. 456; *Verdigris Conservancy District v. Objectors*, 131 Kan. 214, 289 Pac. 966; and *State, ex rel., v. Ancient Order of United Workmen*, 178 Kan. 69, 283 P. 2d 461.

### III.

We shall now consider the eligibility of individual members of the legislature to hold executive office during the terms for which they have been elected to the legislature.

Defendants point to Art. 2, sec. 19 and Art. 15, sec. 1, of the state constitution and contend those provisions of the constitution give the legislature power to provide for the appointment and selection of all officers not otherwise provided for in the constitution. But does not the constitutional principle of separation of powers limit the legislature in the exercise of this power?

It would seem clear that if it had been provided in the 1953 act, now under discussion, that the defendant commission should be composed of members of the legislature appointed by the leader of the senate and the speaker of the house of representatives, there would have been little question as to the invalidity of the statute. Can the statute be made valid by the device of conferring upon the governor the right or duty of appointing the legislative committee to take over the performance of the executive functions?

This device of giving power of appointing members of "parliament" to executive office is not a new system. Under the British "parliamentary government" the prime minister is even today appointed by the crown. William Pitt, the friend of the American colonist, was first appointed in 1783, the year of Cornwallis' surrender and is said to have been the first prime minister directly responsible to parliament and not to the king. Even without modern communications in 1788, James Madison in his first Federalist paper on separation of powers, *supra*, was fully aware of the new British system. Madison in pointing out the difference between the British parliamentary government and the American govern-

ment to be created by the proposed federal constitution, says in part:

"On the slightest view of the British constitution, we must perceive, that the legislative, executive, and judiciary departments, are by no means totally separate and distinct from each other. The executive magistrate forms an integral part of the legislative authority." (The Federalist, p. 374.)

The great statesman continued by pointing out the legislative control over the judiciary, as well. Both Madison and Alexander Hamilton, see *supra,* described the legislature as being the department most apt to encroach upon the prerogatives of the other departments of government.

It may be pointed out that there have been certain checks supplied for the British parliament since 1787; that in importing the parliamentary system to France these later checks were not provided for and that the third and fourth French Republics suffered therefrom; that in the recently formed French Fifth Republic, the government of France has been turned away from the parliamentary system and toward the American system and the new constitution provides for an independent executive department.

Be that as it may, we believe that Madison and Hamilton would have thought the act now under consideration violated their proposed constitution in 1787, and we would point out, contrary to defendants' argument, that our state constitution is theoretically similar to the federal constitution as far as the theory of separation of powers is concerned.

Regardless of the lack of the modern British checks upon parliament in the Kansas constitution, it would seem that section 75-3601 as amended in 1953 violated the American theory of separation of powers set forth in the Kansas constitution at the time of enactment and is therefore still unconstitutional today.

By the provisions of Art. 2, sec. 29 of the state constitution, members of the house of representatives are elected for terms of two years and senators for terms of four years. They are constitutional legislative officers for the entire period of their terms. We know they may perform and do many lawful, legislative functions during the period when the legislature is not in session.

By Art. 2, sec. 5, members of the state legislature lose their seats in that body if after election they are thereafter elected or appointed to any office under the authority of the United States government. It is certainly arguable that the framers of the constitution believed that the principle of separation of powers would prevent any consti-

tutional legislative officer of the state from holding any office under the state in the executive or judicial departments.

Plaintiff has cited the cases of *Book v. State Office Building Commission,* (Ind.) 149 N. E. 2d 237; *Stockman v. Leddy,* 55 Colo. 24, 129 Pac. 220; *Spartanburg County v. Miller, Treas.,* 135 S. C. 348, 132 S. E. 673; *Bramlette v. Stringer,* 186 S. C. 134, 195 S. E. 257; and *Ashmore et al. v. Greater Gr'ville Sewer D. et al.,* 211 S. C. 77, 44 S. E. 2d 88. As called to our attention by defendants' brief, the constitution of Colorado, Indiana and South Carolina all specifically prohibit an officer in one department of the state government from performing duties in another department of the government.

However, we would direct attention to the opinion in *Ruland v. City of Augusta,* supra, wherein the late Mr. Chief Justice Harvey, in a case holding invalid the conference of legislative power upon part of the judiciary department, said:

"Our constitution provides: 'The executive department shall consist of a governor, lieutenant governor, secretary of state, auditor, treasurer, attorney-general and superintendent of public instruction,' etc. (Art. 1, § 1.) 'The legislative power of this state shall be vested in a house of representatives and senate.' (Art. 2, § 1.) 'The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts inferior to the supreme court as may be provided by law,' etc. (Art. 3, § 1.)

"Commenting on these provisions, in *Western Union Tel. Co. v. Myatt,* 98 Fed. 335, 347, it was said:

" 'That, in a broad sense, the powers of one of these departments shall not be conferred upon either of the others, is not only within the true spirit of these provisions, but also substantially within the letter thereof; and the addition thereto of an express prohibitory declaration, such as is contained in the constitutions of some of the states, that the powers of one department shall not be exercised by another, would add very little to their effect; so far as concerns the question under consideration. The universal doctrine of American liberty under written constitutions requires the distribution of all the powers of government among three departments—legislative, judicial, and executive— and that each, within its appropriate sphere, be supreme, coordinate with, and independent of, both the others. This doctrine was adopted into the constitution of one state with the declaration that it was "to the end it may be a government of laws, and not of men" '."

Of this we are certain, that if the creation of a completely legislative committee to perform duties which are entirely within the executive department is not invalid, then the principle of separation of powers between the three departments of the state government does not exist under our state constitution. Stripped of all refinements, we believe that is the import of defendant commission's argu-

ment. This court has always held that the constitution provided for a division of powers between the departments of the state government. Some of the cases are cited *supra*. We have no disposition to recede from our former decisions.

From what has been said, it is evident that plaintiff will be entitled to judgment. However, the validity of the defendants' actions during the space of time from 1953 to the filing of this opinion will immediately be in question. From the time of its creation in 1953 until the filing of this opinion, the acts of the members of defendant commission were those of *de facto* officers binding between all persons dealing with the commission as a public body composed of public officers, see *State, ex rel., v. Hodgson*, 183 Kan. 272, 326 P. 2d 752, syl. 4 and cases cited in that opinion.

It is further held that upon the filing of this opinion, the duties of the defendant commission shall devolve upon the executive council, which has power to manage the property of the state (G. S. 1949, 75-2101 *et seq.*).

Judgment is entered for the plaintiff pursuant to the prayer of the amended petition and in accordance with the views expressed in this opinion.

It is so ordered.

PRICE, J., dissenting: I have no quarrel with what is said concerning the doctrine of "separation of powers" and the "three branches of government." Except, however, for a slight difference in "degree," I am unable to distinguish this case, *in principle*, from what was said and held on the subject in *State, ex rel., v. Kansas Turnpike Authority*, 176 Kan. 683, 692-696, 273 P. 2d 198, and *State, ex rel., v. Fadely*, 180 Kan. 652, 667, 308 P. 2d 537, and to which I adhere.

I therefore respectfully dissent.

FATZER, J., concurring: I fully concur in the holding of the court for the reasons so ably stated by Mr. Justice Jackson, and further, for the reason of what was said in my dissenting opinion in *State, ex rel., v. Fadely*, 180 Kan. 652, 668, 308 P. 2d 537.