No. 70,792

MICHAEL SEDLAK, RICHARD D. WOODWORTH, and JOHN RATLIFF, *Petitioners*, v. JOE DICK, Secretary of Human Resources, and GEORGE GOMEZ, Director of Workers Compensation, *Respondents*.

(887 P.2d 1119)

Opinion filed January 13, 1995.

*Patrick R. Nichols,* of Topeka, argued the cause and was on the briefs for petitioners.

*William R. Sampson* and *David J. Waxse,* of Shook, Hardy & Bacon, P.C., of Overland Park, argued the cause, and *John T. Bullock,* of the same firm, was with them on the brief for respondents.

*John M. Ostrowski,* of McCullough, Wareheim & LaBunker, P.A., of Topeka, and *Bruce Alan Brumley,* of the same firm, were on the brief for *amicus curiae* Kansas AFL-CIO.

*Jeffrey A. Chanay,* of Entz & Chanay, of Topeka, *Kip A. Kubin,* of Payne & Jones, of Overland Park, and *Keith C. Sevedge,* of Kansas City, were on the brief for *amicus curiae* Kansas Chamber of Commerce and Industry.

*Vaughn Burkholder,* of Foulston & Siefkin, of Wichita, and *Stephen M. Kerwick,* of the same firm, were on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

ALLEGRUCCI, J.: In this original action, petitioners Michael Sedlak, Richard D. Woodworth, and John Ratliff challenge the constitutionality of two provisions of the Workers Compensation Act as revised in 1993, K.S.A. 44-555b and K.S.A. 44-556. These sections establish the Workers Compensation Board (Board), provide for Board members to be selected by one representative of the Kansas Chamber of Commerce and Industry (KCCI) and one representative of the Kansas AFL-CIO, and subject Board actions to review by the Court of Appeals on questions of law only. Petitioners' initial filing in this court was called "Original Petition for Relief in Quo Warranto." In their brief, petitioners state that their action is "an original action in mandamus/quo warranto."

The pertinent allegations of the petition are:

¶ 2: "The Plaintiffs both have cases now pending before the Workers' Compensation Appeals Board. Michael Sedlak received an Award from Administrative Law Judge George R. Robertson October 13, 1993. . . . He was notified October 21, 1993 that the case was appealed to said Workers' Compensation Appeals Board."

¶ 3: "Richard D. Woodworth, the other Plaintiff, received a Preliminary Order for compensation from Administrative Law Judge Floyd V. Palmer on October 18, 1993 and was subsequently

notified November 5, 1993 that the matter would be heard by the Workers' Compensation Appeals Board."

¶ 4: "[D]efendants are Joe Dick, lawfully appointed Secretary of Human Resources and George Gomez, Director of Workers' Compensation; . . . the Workers' Compensation Board; Gary Peterson, Don Ramsay, Duncan Whittier, Gary Korte and Kenton Wirth."

¶ 5: "Plaintiffs . . . suffer peculiar injury separate and apart from other citizens as a result of the existence of the Workers' Compensation Appeal Board. . . . Plaintiffs have proper standing. [Citations omitted.]"

¶ 6: "Relief in the form of Quo Warranto, injunction or mandamus is a proper remedy . . . to question the constitutionality of statutes . . . ."

¶ 12: "Most Kansas citizens are not members of the Kansas AFL-CIO or the Kansas Chamber of Commerce and Industry."

¶ 23: "This action is brought in the Appellate rather than District Courts. Adequate relief is not available in the District Court. Particularly unique and compelling circumstances justify exercise of concurrent jurisdiction by the courts of appeal in this state. The selection process here presents a patently unconstitutional effort by which the legislature has invaded the power of the Executive and delegated it to a private interest group. Such offenses to the doctrine of separation of powers and delegation of authority strike at the very heart of our system of government. As fundamentally anti-democratic measures, they will harm not only the two (2) Plaintiffs here but all citizens who have or will have claims made by or against them for workplace injuries. The harm here is vast, effecting [sic] not only thousands of individuals, businesses and their insurers, but the fabric of government in Kansas itself. The magnitude of harm suffered represents the type of compelling circumstance and issue of great public importance and concern which have typified those cases wherein the Kansas Supreme Court has agreed to [hear] an original action in mandamus or Quo Warranto."

¶ 24: "The Court should exercise original jurisdiction in order to determine this issue as a matter of public policy. If litigated

through the District Courts, substantial delay would occur and, as a result, scores if not hundreds of decisions will be made by the Workers' Compensation Appeals Board. . . . Delay in determining this issue serves no end."

¶ 25: "The simplicity of the factual issues argues in favor of the exercise of original jurisdiction. The issues before this Court require very little in the way of a factual record. Such a record will not consist of controverted facts but will, of necessity, be based on stipulations."

¶ 26: "Since Woodworth cannot appeal the decision of the Board (See Senate Bill 307, Section 58) he has no other remedy at law."

On June 20, 1994, this court granted petitioners' motion to name an additional petitioner, John Ratliff. In support of his being added, the petitioners stated:

"1. John Ratliff was the Claimant in *Ratliff v. Wichita Coca-Cola Bottling Company and Travelers Insurance Company*, Docket 179,931.

"2. . . . [T]he Workers Compensation Board . . . reversed the decision of Administrative Law Judge John D. Clark and denied the Claimant the benefits previously awarded.

"3. John Ratliff is without other legal recourse to seek review of this decision. K.S.A. 44-534a specifically provides[: ']a finding with regard to a disputed issue . . . or whether certain defenses apply, shall be considered jurisdictional, and shall be subject to review by the board. Such review by the board *shall not be subject to judicial review.'*

"4. Because the benefits granted by the ALJ and taken away by the Board are not subject to further judicial review, John Ratliff has sustained a unique and peculiar injury . . . different from the public at large."

Respondents admit to ¶¶ 3, 4, 6, and part of ¶ 12 of the petition and agree that Woodworth has standing, this action should be resolved promptly, this court has original jurisdiction, and the material facts are not in dispute. Respondents further respond that as to Michael Sedlak, the Board increased his award, which he accepted and his employer agreed to pay, resulting in Sedlak's claim being moot.

The parties stipulated to the "admissibility" of documents attached to petitioners' brief, respondents' memorandum in support of response to the petition, and the joint stipulation. They also stipulated to the following facts:

"a. The present members of the Workers' Compensation Appeals Board Nominating Committee are Terry Leatherman and Wayne Maichel. They are the principal lobbyists for the Kansas Chamber of Commerce and Industry ('KCCI') and the AFL-CIO Kansas Chapter, respectively.

"b. The Kansas Chamber of Commerce and Industry represents 2,872 total members, KCCI members are individual businesses or local organizations, such as local chambers of commerce, KCCI members employ and/or represent approximately 161,000 business men and women in the State of Kansas.

"c. The Kansas State AFL-CIO has approximately 110,000 members as of March 1993.

"d. The National Federation of Independent Businesses ('NFIB') supported the workers' compensation legislation at issue in this case. The NFIB represents 8,271 businesses in the State of Kansas. . . .

. . . .

"NFIB members employ approximately 100,000 total employees.

"e. The KCCI and NFIB are made up of members and organizational members. Hal Hudson, Director of the NFIB, estimates that, through their members and organizational members, the KCCI and NFIB together represent 211,000 business men and women in the state.

"4. John Burton's Workers' Compensation Monitor published July/August 1992 contains a summary of data collected which indicates that approximately 89% of Kansas employees are eligible for workers compensation coverage based on Social Security Administration data."

Statistical information supplied for the NFIB indicates that its members are small businesses of a wide variety of types.

In 1993, the legislature enacted a comprehensive redesign of the statutory scheme for workers compensation. L. 1993, ch. 286. The present challenge focuses on the new procedures instituted for review of the decisions of administrative law judges. K.S.A. 44-555b and 44-556 are the particular statutory sections at issue. L. 1993, ch. 286, § 19, pp. 1500-01 provides in pertinent part as follows:

"(a) There is hereby established the workers compensation board. The board shall have exclusive jurisdiction to review all decisions, findings, orders and awards of compensation of administrative law judges under the workers compensation act. The review by the board shall be upon questions of law and fact as presented and shown by a transcript of the evidence and the proceedings as presented, had and introduced before the administrative law judge. The board shall be within the division of workers compensation of the department of human resources and all budgeting, personnel, purchasing and related management functions of the board shall be administered under the supervision and direction

of the secretary of human resources. The board shall consist of five members who shall be appointed by the secretary in accordance with this section and who shall each serve for a term of four years, except as provided for the first members appointed to the board under subsection (f).

"(b) Each board member shall be an attorney regularly admitted to practice law in Kansas for a period of at least seven years and shall have engaged in the active practice of law during such period as a lawyer, judge of a court of record or any court in Kansas or a full-time teacher of law in an accredited law school, or any combination of such types of practice.

"(c) . . . The board members shall devote full time to the duties of such office and shall not engage in the private practice of law during their term of office. . . .

. . . .

"(e) There is hereby established the workers compensation board nominating committee which shall be composed of two members appointed as follows: The Kansas AFL-CIO and the Kansas chamber of commerce and industry shall each select one representative to serve on the workers compensation board nominating committee and shall give written notice of the selection to the secretary who shall appoint such representatives to the committee. . . .

"(f) (1) . . . The nominating committee shall be required to reach unanimous agreement on any nomination to the board. The secretary shall accept and appoint each person nominated by the nominating committee to the position on the board for which the person is nominated, unless the secretary can demonstrate how the nominee fails to meet the qualifications prescribed in subsection (b) . . . ."

L. 1993, ch. 286, § 58, pp. 1567-68 provides in pertinent part as follows:

"(a) Any action of the ~~director~~ *board* pursuant to the workers compensation act, *other than the disposition of appeals of preliminary orders or awards under K.S.A. 44-534a and amendments thereto*, shall be subject to review in accordance with the act for judicial review and civil enforcement of agency actions *by appeal directly to the court of appeals. Any party may appeal from a final order of the board by filing an appeal with the court of appeals within 30 days of the date of the final order.* Such review shall be upon questions of law . . . ."

We note in passing that *amicus curiae* KCCI questions the suitability of the parties. First, it suggests that the Board members, who are not named as respondents, may be necessary parties to an action which challenges the constitutionality of the composition of the Board. We note that ¶ 4 of the petition states that the Board members are "defendants" and that paragraph is admitted. Next, KCCI suggests that petitioners have failed to state a cause

of action against Dick and Gomez, neither of whom is alleged to unlawfully hold or exercise office. Third, it questions the standing of the petitioners on several grounds. KCCI contends that both statutory and case law require this action to be prosecuted by the State with the attorney general as relator. K.S.A. 60-1203 provides in pertinent part:

"Where the action is brought by a person claiming an interest . . . adverse to a[n] . . . ordinance . . . which is the subject of the action, it shall be prosecuted in the name and under the direction of such person, otherwise it shall be prosecuted in the name of the state by the attorney general or county attorney."

KCCI quotes from *Rowlands v. State*, 187 Kan. 174, Syl., 354 P.2d 674 (1960), where the court stated the following rule:

"An action to question the power or authority of governmental agencies or public officials should ordinarily be brought in the name of the state on the relation of the attorney general or county attorney. Before a private citizen can maintain such an action he must show some interest or right distinct from those of other citizens."

In the present case, one or more of the petitioners claims an interest adverse to the statutes creating the Board and limiting appeals from its decisions and alleges an interest or right distinct from those of other citizens who have not suffered adverse compensation decisions. Missing from the KCCI's assertions is any acknowledgement that one or more of the petitioners alleges that the unconstitutionally constituted Board wrongly decided his compensation question and/or that the unconstitutional limitation on appeals from the Board's decisions prevents him from obtaining review. We find no merit in KCCI's questioning the propriety or standing of the parties.

Article 3, § 3 of the Kansas Constitution grants original jurisdiction in proceedings in mandamus and quo warranto to this court. In *State ex rel. Stephan v. Finney*, 251 Kan. 559, 836 P.2d 1169 (1992), the court stated:

" 'It has been held mandamus is an appropriate proceeding designed for the purpose of compelling a public officer to perform a clearly defined duty, one imposed by law and not involving the exercise of discretion. *Manhattan Buildings, Inc. v. Hurley*, 231 Kan. 20, Syl. ¶ 2 [, 643 P.2d 87 (1982)]. Numerous prior decisions have recognized mandamus is a proper remedy where the es-

sential purpose of the proceeding is to obtain an authoritative interpretation of the law for the guidance of public officials in their administration of the public business, notwithstanding the fact that there also exists an adequate remedy at law. 231 Kan. 20, Syl. ¶ 4; *Mobil Oil Corporation v. McHenry*, 200 Kan. 211, 239, 436 P.2d 982 (1968), and cases cited therein. . . .

'Original actions in quo warranto may be brought in this court when "any person shall usurp, intrude into or unlawfully hold or exercise any public office." K.S.A. 60-1202(1). This court has recognized on several occasions that in a proper case an original action in quo warranto is an appropriate procedure to question the constitutionality of a statute. *E.g., State ex rel. Stephan v. Martin*, 230 Kan. 747, Syl. ¶ 1, 641 P.2d 1011 (1982).

. . . .

'Relief in the nature of quo warranto and mandamus is discretionary. *State ex rel. Stephan v. Carlin*, 229 Kan. [665, 666, 630 P.2d 709 (1981)]. This court may properly entertain this action in quo warranto and mandamus if it decides the issue is of sufficient public concern.' " 251 Kan. at 567 (quoting *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 52-53, 687 P.2d 622 [1984]).

In this action, the petitioners question the constitutionality of the legislature's action in establishing the Workers Compensation Board, whose members are selected by representatives of private organizations, in eliminating district court review of decisions concerning compensation of injured and disabled workers and in limiting review of the Court of Appeals to questions of law. Petitioners contend that the legislature's actions usurped the power of the executive branch of the State's government and delegated it to private, special-interest groups. They urge this court to exercise its original jurisdiction so that there may be a speedy determination of the issue and, in the event of a decision in their favor, the number of decisions and awards which may be invalidated or clouded will have been contained to the extent possible. Respondents agree this court "should exercise original jurisdiction in order to determine the issues presented by this action in the most expeditious manner possible."

The subject of petitioners' allegations "is neither minor nor inconsequential." *Finney*, 251 Kan. at 568. The establishment of the Board and new procedures for review of the decisions of administrative law judges mark substantial and significant deviations from the former scheme and involve several practices and pro-

cedures which have not come under the scrutiny of this court. It is a matter of statewide concern, and all of those workers, employers, insurers, and Board members who are affected by the operation of 44-555b and 44-556 would benefit from an immediate resolution. Thus, we conclude that a controversy of great public importance and concern exists and that the purpose of the proceeding is to challenge the constitutionality of the legislature's action. The quo warranto proceeding is an appropriate mechanism for resolution of the issues.

In the present case, the petitioners initially contend that K.S.A. 44-555b violates the doctrine of separation of powers by authorizing the legislature to usurp the executive power to appoint executive officers. In *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 687 P.2d 622 (1984), the State on relation of the attorney general challenged the constitutionality of K.S.A. 1983 Supp. 77-426(c) and (d), which authorized the legislature to adopt, modify, or revoke administrative rules and regulations without presentment to the governor. One basis of the challenge was that the statute violated the doctrine of separation of powers by authorizing the legislature to usurp the executive power to administer and enforce laws. The court outlined its analysis as follows:

"First we look to the nature of the power being exercised. It has consistently been held in this state that the power to adopt rules and regulations is essentially executive or administrative in nature, not legislative. . . .

"Secondly, we must seek to determine the degree of control by the legislature over the executive branch. Under the procedure established in 77-426 the legislature has total and absolute control to modify, reject or revoke any rules or regulations . . . .

"The third and fourth factors require us to look at the objective sought to be obtained and the practical result. Here the apparent objective and result actually accomplished is the control by the legislature over the adoption of rules and regulations by administrative agencies and the exclusion of participation by the executive branch in this area." 236 Kan. at 60.

Here, the nature of the power in question is the power of appointment. Article 15, § 1 of the Kansas Constitution provides: "All officers whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by

law." Article 2, § 18 provides: "The legislature may provide for the election or appointment of all officers and the filling of all vacancies not otherwise provided for in this constitution." Respondents rely in particular on *Leek v. Theis*, 217 Kan. 784, 539 P.2d 304 (1975), which drew from *Sartin v. Snell*, 87 Kan. 485, 125 Pac. 47 (1912), for the proposition that our state constitution neither confers on the governor the power of appointment nor prohibits its exercise by the legislature.

In *Leek*, the court decided that a statute which provided for senatorial confirmation of gubernatorial appointments to the Kansas Adult Authority (Authority) was constitutional. The controversy arose when the senate failed to confirm outgoing Governor Docking's appointment of Theis as a member of the Authority and, instead, confirmed incoming Governor Bennett's appointment, Leek. It was of great significance to the court that senate confirmation of gubernatorial appointments had been the long-standing custom in this state and in the territory which preceded it. The court noted that in 1970, "of the governor's 323 appointments, fully 86 require senate confirmation." 217 Kan. at 794. In this regard, the court stated that it

"deems it probable that had the drafters of our constitution intended that the senate not have powers of confirmation over gubernatorial appointments, they would have prohibited the practice.

"The Constitution of the State of Kansas limits rather than confers power, and where a statute is attacked as unconstitutional the question to be determined is not whether its provisions are authorized by the constitution, but whether they are prohibited by it. (*Lemons v. Noller*, 144 Kan. 813, 63 P.2d 177; *State, ex rel., v. Ancient Order of United Workmen*, 178 Kan. 69, 283 P.2d 461; *State, ex rel., v. Anderson*, 180 Kan. 120, 299 P.2d 1078; and *Schumacher v. Rausch*, 190 Kan. 239, 372 P.2d 1005.)" 217 Kan. at 795.

Theis and the attorney general argued that the power to appoint officers in the executive department is inherently an executive function. 217 Kan. at 795. The court, however, stated that a thorough review of the materials submitted in support of their position "reveals no Kansas authority expressly holding the appointive power is inherently executive." 217 Kan. at 796. In fact, the court quoted the following authorities to the contrary:

"Justice Harvey in his concurring opinion in *Barrett v. Duff*, [114 Kan. 220, 217 Pac. 918 (1923)], says the majority opinion purported to find authority for

filling a vacancy in the office of state oil inspector in Art. 1, § 3, the faithful execution of laws clause previously quoted. Justice Harvey writes:

'. . . But the authorities uniformly hold that such constitutional provision does not confer upon the governor the power to appoint officers, either for full terms or to fill vacancies. The only power the governor has to make official appointments is that conferred upon him by specific constitutional or statutory provisions, and that has been repeatedly recognized, both in our constitution and in our statutes. . . .' (p. 241.)

" 'A power of appointment is not an exclusive function of the executive, nor has it ever been so considered.' (*State, ex rel., v. Kansas Turnpike Authority*, 176 Kan. 683, 695, 273 P.2d 198; and *State, ex rel., v. Fadely*, 180 Kan. 652, 692, 308 P.2d 537.)" 217 Kan. at 796.

## The court also looked to *Sartin*:

"A constitutional attack was made upon a legislative enactment creating the office of county auditor in certain counties and conferring upon the district judge the power of appointing a suitable person to such office in *Sartin v. Snell*, 87 Kan. 485, 125 Pac. 47, and it was held to be a valid exercise of legislative authority. The act was challenged as violating the separation of powers doctrine, and the court noting various means provided by statute for the selection of public officers, said:

'. . . The constitution contains no inhibition upon the power of the legislature to provide as it may deem best the method for the appointment of officers whose election or appointment is not otherwise provided for. On the other hand, the constitution expressly declares that "all officers whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by law." (Const. art. 15, 1.) It will thus be seen that the constitution has placed in the legislature the power to regulate the mode of appointing officers not otherwise provided for. In view of the power thus expressly conferred upon the legislature it seems unnecessary to refer specially to cases from other states, though numerous decisions might be cited where, under constitutions similar to ours, the authority of the legislature to confer upon judges and courts the power to appoint inferior officers whose duties have no connection with the functions of courts is recognized. (*The People, ex rel., v. Hoffman et al.*, 116 Ill. 587, 5 N.E. 596, 56 Am. Rep. 793; *The People v. Board of Supervisors*, 223 Ill. 187, 79 N.E. 123; *The People v. Evans*, 247 Ill. 547, 93 N.E. 388; *City of Indianapolis v. State, ex rel.*, 172 Ind. 472, 88 N.E. 687; *In re Appointment of Revisor*, 141 Wis. 592, 124 N.W. 670.)

'Upon the question whether the power to appoint to office is a legislative, executive, or judicial function the late Mr. Freeman, in a monographic note to *People v. Freeman*, 80 Cal. 233, 22 Pac. 173, used the following language:

" 'The truth is, that the power of appointing or electing to office does not necessarily and ordinarily belong to either the legislative, the executive, or the judicial department. It is commonly exercised by the people, but the legislature

may, as the law-making power, when not restrained by the constitution, provide for its exercise by either department of the government, or by any person or association of persons whom it may choose to designate for that purpose. It is an executive function when the law has committed it to the executive, a legislative function when the law has committed it to the legislature, and a judicial function, or at least a function of a judge, when the law has committed it to any member or members of the judiciary." (13 Am. St. Rep. 122, 130.)

'It is apparent, therefore, that it is a valid exercise of legislative authority to impose upon the judge of the district court the power of appointing a county auditor.' (pp. 494, 495.)" 217 Kan. at 797.

With regard to the extent of power granted to the legislature by the Kansas Constitution, the court quoted the following:

" ' "Under our form of government all governmental power is inherent in the people. Some governmental powers are delegated to congress, or to the federal government, by our federal constitution; those not so delegated are retained by the people. Hence, congress has no legislative power not granted to it by the federal constitution. This is not true of a state constitution. Since the people have all governmental power, and exercise it through the legislative branch of the government, the legislature is free to act except as it is restricted by the state constitution, and except, of course, the grant of authority to the federal government by the federal constitution." [*Jansky v. Baldwin*, 120 Kan. 332, 334, 243 Pac. 302.]'

"Other cases in accord with the foregoing are: *Wilson v. Clark*, 63 Kan. 505, 65 Pac. 705; *Sartin v. Snell*, supra; *Hicks v. Davis*, 97 Kan. 312, 154 Pac. 1030, reh. denied, 97 Kan. 662, 156 Pac. 774; and *Manning v. Davis*, 166 Kan. 278, 201 P.2d 113." 217 Kan. at 802.

The court concluded that the power to appoint public officers was neither an inherent nor exclusive function of the executive branch. 217 Kan. at 802.

Petitioners argue that *Leek* supports their position that "the legislative power to fix the method of appointment of executive officers is subject to constitutional limitations inherent in our form of government." They quote the following portion of Syl. ¶ 8: "Within constitutional limits the legislature, as representative of the people, can vest the power in its discretion." 217 Kan. 784. The constitutional limitation which operates to keep the power of appointment from vesting in the legislature, according to petitioners, is the separation of powers doctrine. They do not directly attempt to reconcile their argument with the holding of *Leek*. They do distinguish *Leek* from the present case on the

ground that here, the selection process "denies the governor any discretion in the selection of state officials," while in *Leek*, the question was senate confirmation of a gubernatorial appointment.

Petitioners cite cases from federal and other state courts for the general proposition that legislation which invades the executive appointment power is unconstitutional. This, of course, begs the fundamental question of the relative scopes of appointment power of the legislative and executive branches under the Kansas Constitution. There has been no showing that the other state cases interpreted constitutional provisions like Article 15, § 1 and Article 2, § 18 of the Kansas Constitution.

The federal cases cited by petitioners are *Bowsher v. Synar*, 478 U.S. 714, 92 L. Ed. 2d 583, 106 S. Ct. 3181 (1986); *INS v. Chadha*, 462 U.S. 919, 77 L. Ed. 2d 317, 103 S. Ct. 2764 (1983); and *Buckley v. Valeo*, 424 U.S. 1, 46 L. Ed. 2d 659, 96 S. Ct. 612 (1976). Unlike the state court cases cited by petitioners, these three federal cases do turn on the principle of separation of powers. Embodied as it is in the federal Constitution, however, the principle does not apply in the present case. Nor do the concepts involved seem to transfer to the present circumstances. As this court explained in *Leek*, the sources of power of the legislative branches of the federal and state governments differ profoundly. 217 Kan. at 802. Federal legislative power derives solely from the federal Constitution; a state legislature is " 'free to act except as it is restricted by the state constitution.' " 217 Kan. at 802 (quoting *Jansky v. Baldwin*, 120 Kan. 332, 334, 243 Pac. 302 [1926]).

In *Parcell v. State of Kan.*, 468 F. Supp. 1274, 1277 (D. Kan. 1979), *aff'd* 639 F.2d 628 (10th Cir. 1980), Judge O'Connor considered a challenge to the constitutionality of the statutory method of appointing members of the Governmental Ethics Commission, " 'five of whom are appointed by the Governor, two by the President of the Senate, two by the Speaker of the House of Representatives, one by the Minority Leader of the House of Representatives, and one by the Minority Leader of the Senate.' " Judge O'Connor disagreed with Parcell's contention that "federal and Kansas cases on the doctrine [of separation of powers] may be used interchangeably." 468 F. Supp. at 1277. He noted that

"the Kansas Constitution gives a power of appointment to the Legislature. Kansas Const., Art. 2, § 18 (1978 Supp.)." 468 F. Supp. at 1278. He quoted *Leek* for the rule that appointment power is not an exclusive or inherent function of the executive in this state, and he used the four-step analysis developed by this court. 468 F. Supp. at 1278-80. He concluded that the selection method for the members of the Governmental Ethics Commission did not violate the doctrine of separation of powers.

In the present case, the restriction which the petitioners contend is placed on the actions of the Kansas Legislature by the Kansas Constitution is the doctrine of separation of powers. The petitioners, however, do not point to any constitutional provision which removes from the legislature power to appoint officers. Nor do they point to any provision which places that power exclusively in the executive. Moreover, Kansas cases analyzing the State's scheme of separation of powers hold that the appointment power does not reside exclusively in the executive branch and emphasize that the functions of the various branches are not discretely compartmentalized. Thus, the nature of the power being exercised has not been shown to be exclusively executive.

The second step in the analysis is to determine the degree of control by the legislature over the executive branch. Under the procedure established in K.S.A. 44-555b, the legislature assumed total control of the process by which the Board members are appointed. Petitioners rely on *State, ex. rel., v. State Office Building Commission*, 185 Kan. 563, 345 P.2d 674 (1959), for the proposition that "the Legislature has no power to appoint members of the executive branch." In fact, the teaching of *State Office Building* is:

"A statute which directs and authorizes the governor to appoint a seven member commission for the performance of executive duties entirely from members of the legislature is unconstitutional and void as violating the constitutional principle of separation of powers." 185 Kan. 563, Syl. ¶ 3.

The court considered three issues: whether the nature of the commission's power is purely executive, whether the state constitution provides for separation of powers, and whether legislators may simultaneously hold state executive office. Having answered the

first two questions in the affirmative, the court turned to the third and concluded that members of the legislature may not hold executive office under the state government during the term for which they have been elected to the legislature. 185 Kan. at 572-75.

Whether legislators may serve as Workers Compensation Board members is not at issue in the present case. Moreover, there has been no determination of the nature of the Board's power. Even though petitioners rely heavily on *State Office Building* and argue that the legislature cannot appoint executive officers, they also refer to the judicial or quasi-judicial nature of the power exercised by the Board.

Third, the objective of the legislature appears to have been creation of a balance between the interests of labor and industry in the panel which reviews workers compensation decisions and awards. Fourth, it does not seem to be disputed that the practical result coincides with the objective.

In these circumstances and under these precedents, we conclude that there had not been an unconstitutional usurpation of power by the legislature from the executive. Article 2, § 18 of the Kansas Constitution provides that the legislature may appoint officers not otherwise provided for in the constitution. Although the degree of the control exercised by the legislature is total, it has not been shown that the power being exercised is not legislative by nature. Because this court presumes a statute to be constitutional and resolves all doubts in favor of its validity, a statute must appear clearly to violate the constitution if it is to be stricken down. K.S.A. 44-555b cannot be said to appear clearly to violate this state's constitutional principle of separation of powers by legislative usurpation of executive power.

We next consider the question of delegation of legislative authority to private groups. A doctrine of nondelegation has been treated by some courts as a facet of separation of powers. As noted above, some of the foreign cases cited by petitioners in support of the contention that K.S.A. 44-555b constitutes an improper usurpation of executive power actually involve instead the question of unlawful delegation of power. In addition to those foreign

cases, petitioners rely on *Gumbhir v. Kansas State Board of Pharmacy*, 228 Kan. 579, 618 P.2d 837 (1980). The Kansas Board of Pharmacy refused to permit Gumbhir either to take the examination for registration as a pharmacist or to be admitted by reciprocity because he did not have an undergraduate degree from a school in the United States accredited by the American Council on Pharmaceutical Education (ACOPE). 228 Kan. at 580. The Board interpreted K.S.A. 1979 Supp. 65-1631 to require a degree from such an accredited school, and Gumbhir challenged the statute's constitutionality. According to this court:

"ACOPE is a nongovernmental agency organized exclusively for educational and other nonprofit purposes. This nongovernmental agency attempts to approve and accredit only schools of pharmacy located in the United States. No pharmacist who has obtained his or her undergraduate degree from a school outside the United States can hope to become a registered pharmacist in the State of Kansas under the Board's interpretation of this statute." 228 Kan. at 580.

The court concluded:

"The provision in K.S.A. 1979 Supp. 65-1631(a) which restricts approval of the necessary educational qualifications for examination and registration of pharmacists in this state to those individuals who have graduated from schools of pharmacy accredited by the American Council on Pharmaceutical Education, a nongovernmental agency, is constitutionally impermissible. The Kansas State Board of Pharmacy, which has been given general authority to register pharmacists, if bound by said provision, would not have the ultimate authority. That authority would be in ACOPE, a nongovernmental association which makes its own standards for accrediting those schools whose graduates may become registered pharmacists in Kansas.

"The provision of the statute referred to above constitutes an unlawful delegation of legislative authority to a nongovernmental association and is constitutionally impermissible under Article 2, Section 1 of the Constitution of the State of Kansas." 228 Kan. at 587.

Article 2, § 1 provides: "The legislative power of this state shall be vested in a house of representatives and senate."

Respondents would distinguish *Gumbhir* from the present case on two grounds. First, they contend that delegation of authority under K.S.A. 44-555b is to a public rather than a private agency. Their contention is that Board members are nominated by the "Nominating Commission," which is a public agency created by the statute. We find this contention to be without merit.

By the terms of the statute, both members of the two-person workers compensation board nominating committee are representatives of private organizations. They are chosen by their respective private organizations, and their selections cannot be overridden. Respondents compare this arrangement with the Kansas Board of Healing Arts, which this court found in *Vakas v. Kansas Bd. of Healing Arts*, 248 Kan. 589, 808 P.2d 1355 (1991), to be a proper recipient of authority delegated by the legislature. Without dwelling on what makes an agency public or private, this court stated in *Vakas* that the legislature may "grant state agencies discretion to fill in details [of regulation] if the legislature establishes reasonable and definite standards to govern the exercise of this authority." In contrast, legislative power may not "be delegated to nongovernmental organizations or groups." 248 Kan. at 594.

The legislature's creating the nominating committee does not make it a governmental agency where its members are selected by, not just drawn from, private organizations. Under K.S.A. 44-555b(e), absolute control of selection of the committee members lies in the private organizations. Only one name is submitted for each vacancy. Actual appointment is made by the Secretary of Human Resources, but he or she has no discretion to reject or substitute for the person or persons selected by the KCCI and/or the AFL-CIO. The state agency hailed by respondents, the Kansas Board of Healing Arts, has 15 members—a mix of health care professionals and members of the general public. K.S.A. 65-2813. They are selected and appointed by the governor who, for certain members, must give consideration to a list of three or more names submitted by the interested professional group, but is not bound by the statute to appoint from the list.

In *State Office Building*, the court considered and rejected the proposition that form should prevail over substance in determining the validity of a statutory scheme. Acknowledging that the invalidity of a statute which permitted legislative leaders to appoint legislators to the State Office Building Commission would be a foregone conclusion, the court posed this question: "Can the statute be made valid by the device of conferring upon the governor the right or duty of appointing the legislative committee to

take over the performance of the executive functions?" 185 Kan. at 572. The court concluded that the device was ineffective for the purpose of "sanitizing" the statute. Similarly, in the present case, we reject the proposition that representatives of private organizations may be clothed with public robes by the legislature's creating the nominating committee and conferring on the secretary the duty of appointing its members.

The second ground on which respondents would distinguish *Gumbhir*, as well as other Kansas cases relied on by petitioners, involves the function of the agency to which the legislature delegated authority. They contend that the authority delegated to the workers compensation board nominating committee is only the selection of public officials, while the authority delegated to ACOPE and other agencies, in other cases relied on by plaintiff, included or was tantamount to rulemaking and enforcement. It is respondents' position that the former is tolerated under our state constitution, but that the latter is not. For approval of "participation by private organizations in the appointment process," respondents rely on *Leek, Sartin,* and *Marks v. Frantz,* 179 Kan. 638, 298 P.2d 316 (1956). Petitioners concede the distinction but reply that it is a factual one only and that the constitutional protection from improper delegation is as vital to the selection of Board members as it is to rulemaking or enforcement. Petitioners cite a number of foreign cases in which delegations of appointment power were invalidated.

We turn first to the respondents' reliance on *Leek, Sartin,* and *Marks.* All of these cases are factually distinguishable from the present case. Neither *Leek* nor *Sartin* involved "participation by private organizations in the appointment process." *Leek* involved senatorial confirmation of gubernatorial appointments to the Kansas Adult Authority. The statute challenged in *Sartin* was one conferring authority on the district court to appoint a county auditor. 87 Kan. 485, Syl. ¶¶ 1, 2.

At issue in *Marks* was a statute which provided that "the governor must appoint the members of the board of examiners in optometry . . . from a list of four names for each appointment submitted by the Kansas optometric association." Its constitu-

tionality was challenged on the theory that it "deprives the governor of his power of determination and appointment and confers it on the optometric association, which appellant says is a private corporation, although that does not appear from the statute." 179 Kan. at 647. Upon review of a number of statutes and cases, the court concluded that the scheme was typical rather than aberrant and "that the statute providing for the appointment of the members of the board of examiners in optometry is not unconstitutional." 179 Kan. at 651. Here is the court's summation of its analysis:

"We have examined many authorities cited in the briefs and not mentioned above, but bearing in mind our constitutional provision as to the power of the legislature to prescribe for the filling of vacancies in public office [Art. 15, § 1, 'All officers whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by law.' Art. 2, § 18, 'The legislature may provide for the election or appointment of all officers and the filling of all vacancies not otherwise provided for in this constitution.'], the general trend of our legislation thereon, and analogies drawn from our cited cases, and in accord with what we deem to be the clear weight of authority in other jurisdictions, we hold that the statute providing for the appointment of the members of the board of examiners in optometry is not unconstitutional." 179 Kan. at 651.

Respondents seek to distinguish, in addition to *Gumbhir*, the following cases cited by petitioners: *State, ex rel., v. Mermis*, 187 Kan. 611, 358 P.2d 936 (1961); *Quality Oil Co. v. duPont & Co.*, 182 Kan. 488, 322 P.2d 731 (1958); and *State v. Crawford*, 104 Kan. 141, 177 Pac. 360 (1919). Respondents' point is well taken to the extent that they argue that these instances in which the court has invalidated the delegation of authority involved rule-making and enforcement. These decisions, therefore, are not controlling precedents for invalidating the delegating statute in the present case. On the other hand, there is nothing in them which precludes transfer of the principles to the present circumstances.

The question in *Quality Oil* was whether the Kansas Fair Trade Act, as it applied to nonsigners of contracts entered into pursuant to its provisions, was in conflict with the Kansas Constitution. 182 Kan. at 492. The constitutional failing was not in the price fixing itself, but in the unlawful delegation of the legislative power to

fix minimum retail prices "in violation of Art. 2, § 1 of the Constitution of Kansas, which provides, 'The legislative power of this state shall be vested in a house of representatives and senate.'" 182 Kan. at 495. There is language in the *Quality Oil* opinion which suggests that the price-fixing power of the legislature is absolutely nondelegable. For example, the court stated:

"The power to fix rates or prices for the sale of services or commodities binding upon all parties whether or not they consent is a legislative power [citations omitted], and the legislature may not abdicate its function and delegate that power to a governmental agency, official, board, or to a private organization or person. [Citations omitted.]" 182 Kan. at 495-96.

Elsewhere there is the suggestion that, even if outright delegation of price fixing is prohibited, the legislature might have accomplished the same objectives of trademark protection and so forth within constitutional bounds:

"We are not here concerned with a statute which places upon an official or board a duty to execute a law made by the legislature, or which fixes a reasonable and fair rate, price or charge for trademark, brand or named commodities and delegates to a governmental agency the power to find as a fact what is fair and reasonable under proper standards and subject to safeguards of procedural due process, nor do we decide the validity of such a statute." 182 Kan. at 498.

As previously noted, petitioners have cited a number of cases from other states in which unlawful delegation of legislative power was the undoing of a statute. In *Hetherington v. McHale*, 458 Pa. 479, 329 A.2d 250 (1974), the Pennsylvania court invalidated a statute on the ground that "the power to appoint persons to conduct governmental functions cannot be delegated to private organizations." 458 Pa. at 481.

In *Hetherington*, the Pennsylvania court faced the question raised by respondents in the present case: whether the propriety of the legislature's delegating power depended on the nature of the power. As this court had done in *Quality Oil*, the Pennsylvania court earlier had invalidated the nonsigner provision of that state's Fair Trade Act on the ground that the legislature's price regulatory power could not be delegated to private persons. *Olin Mathieson C. Corp. v. White C. Stores, Inc.*, 414 Pa. 95, 199 A.2d 266 (1964). In *Hetherington*, the Pennsylvania court decided that

the guiding principles which applied to regulatory power applied as well to appointment power. The court concluded:

"We are equally concerned with the preservation of the 'essential concepts of a democratic society' when the power delegated is the authority to make appointments to a committee exercising governmental functions. The power to select those who make public decisions is too vital a part of our scheme of government to be delegated to private groups. *Olin Mathieson,* supra; cf. Pa. Const. article IV, section 8." 458 Pa. at 485.

Two other cases relied upon were *State ex rel. James v. Schorr, et al.,* 45 Del. 18, 65 A.2d 810 (1948), and *Opinion of the Justices,* 337 Mass. 777, 150 N.E.2d 693 (1958). Based on the three authorities, the court "concluded that the Constitution prohibits delegation to private groups of the power to make governmental appointments." *Hetherington,* 458 Pa. at 487.

In *State ex rel. James v. Schorr, et al.,* the court invalidated a statute which increased the number of members of the Department of Elections for New Castle County and provided that five members were to be nominated by each state chairman of the two leading political parties. The governor was required to appoint the persons nominated by the political party chairmen. The infirmity in this scheme was its vesting authority in private organizations: "By this procedure the Legislature delegated to the State Chairman of the two leading political parties, which are not agencies of the State or connected with the State Government, the right to appoint ten members of the Department of Elections for New Castle County." 45 Del. at 24-25. A case involving the legislature's authorizing the State Highway Department to make certain appointments was distinguished as follows:

"[T]he Legislature can pass an act creating a state agency or board and name the members thereof in the act; and we are of the opinion, that the Legislature can authorize the State Highway Department which is a State Agency to make certain appointments, but the Legislature cannot delegate to the State Chairman of a political party, which is a voluntary organization of individuals, accountable to no one except its own organization, having no connection with the three branches of government in which the sovereign power of government is lodged by the Constitution, the power to appoint the members of a state agency such as the Department of Elections for New Castle County." 45 Del. at 25.

The Delaware court distinguished cases in which appointments were to be made from a list of names which allowed the ap-

pointing power to exercise some discretion. 45 Del. at 28-29. The court also distinguished other acts of the Delaware Legislature on the same basis. 45 Del. at 32-33.

*Opinion of the Justices,* 337 Mass. 777, is an advisory opinion of the Supreme Judicial Court of Massachusetts to the state legislature on questions including whether a special commission could be authorized to spend public funds for a state commemoration of the centennial of the Civil War. The special commission was to be made up of the governor, 4 members of the legislature, 4 persons appointed by the governor, and 16 persons named by nongovernmental veterans' organizations. The court expressed the following view:

"We think that it would not be proper to authorize the selection of persons to expend public funds by organizations or groups not themselves public bodies or made up of public officers. It may be otherwise where there is no more than a power of nomination in a private organization." 337 Mass. at 784.

Despite the veterans' unquestioned interest and qualifications to serve on the commission, authorizing them to spend public funds was said to be improper because "each individual is accountable solely to his own respective organization and has no connection with any branch of government in which the sovereign power is lodged by our Constitution." 337 Mass. at 784.

The challenge in *Matter of Fink v. Cole,* 302 N.Y. 216, 97 N.E.2d 873 (1951), was to an act of the legislature which delegated to The Jockey Club, a private corporation, the power to license horse owners, trainers, and jockeys. The act gave the stewards of The Jockey Club discretion to grant or deny licenses. In that regard, the court stated:

"[I]n the exercise of the broad discretion vested in them in the issuance of licenses—essentially a sovereign power—the stewards are officers of The Jockey Club who are neither chosen by, nor responsible to the State Government. They are not sworn as public officers, nor are they removable as such." 302 N.Y. at 224.

The court concluded that the delegation was patently unconstitutional.

Respondents did not respond to the out-of-state cases relied upon by petitioners for the contention that the legislature un-

constitutionally delegated appointive power to private organizations. They briefly describe two out-of-state cases cited by this court in *Marks v. Frantz*, 179 Kan. at 650. In *Elrod v. Willis, Governor*, 305 Ky. 225, 203 S.W.2d 18 (1947), and *Bradley v. Board of Zoning Adjustment*, 255 Mass. 160, 150 N.E. 892 (1926), statutes requiring a governmental official to appoint members of boards from lists of persons submitted by private groups were approved. We note that in *Opinion of the Justices*, where the Massachusetts court disapproved a Civil War commemoration commission with members drawn from private organizations, the court stated with regard to *Bradley*: "It may be otherwise where there is no more than a power of nomination in a private organization." 337 Mass at 784.

The nature of the delegated power in the present case is appointive rather than regulatory. In *Marks v. Frantz*, too, the delegated power was appointive. There, the nature of the function to be performed by the appointees was regulatory. The optometry act delegated to the Kansas State Board of Examiners in Optometry authority to grant certificates of registration, to revoke certificates, to make rules and regulations for the conduct and government of applicants for certificates and for licensed and registered optometrists, and to prescribe a code of ethics for optometrists. This court upheld the constitutionality of the optometry act.

In *Marks*, the appointments were recommended. The optometry act provided that the governor would appoint a three-person board of examiners from a list of four names for each appointment submitted by the optometric association. 179 Kan. at 644. In *Sartin v. Snell*, 87 Kan. 485, 125 Pac. 47 (1912), the appointment was made by the district judges. In neither case was the power to appoint delegated to a private person or organization. A number of the cases cited by petitioners involve appointments from among a list of names submitted by a private group. Although the practice effectively restricts the candidates to members of the private organization, courts generally view this practice as permitting the governor or legislature to maintain some participation or discretion in the appointment. As this court noted in *Marks*,

the legislature has provided "a restricted power of appointment in many instances," and that "seems to be a settled legislative pattern." 179 Kan. at 649.

In the present case, the appointments are absolute. We are not dealing with the legislature's delegating the authority to recommend or nominate but, rather, with the delegation of power to appoint members of the commission. No cases have been cited by respondents where an absolute delegation of appointment power to a private organization withstood a constitutional challenge, nor are we aware of any.

In *Gumbhir v. Kansas State Board of Pharmacy*, 228 Kan. 579, 854-85, 618 P.2d 837 (1980), we said:

"After reviewing these cases it appears the legislature may enact general provisions for regulation and grant to *state agencies* certain discretion in filling in the details, provided it fixes reasonable and definite standards to govern the exercise of such authority. [Citations omitted.]

"However, a strict rule is applied when the delegation of authority to some outside, nongovernmental agency is attempted. The legislative power of this state is vested in the legislature and the legislature is prohibited from delegating legislative powers to *nongovernmental associations or groups*."

We then held the statute was an unlawful delegation of legislative authority to a nongovernmental association and therefore constitutionally impermissible under Article 2, § 1 of the Kansas Constitution. Article 2, § 1 expresses the fundamental concept that we are to be governed by our duly elected representatives. It is the foundation upon which our democratic form of government is built.

The concept of utilizing qualified Board members experienced in the workers compensation field has merit. We do not find that a private organization cannot participate in the selection process. The power of nomination may be exercised by a private organization. In *Marks*, the recommendations were made by a private organization, the Kansas Optometric Association, with the final selection made by the governor. The fatal flaw in K.S.A. 44-555b is not in the AFL-CIO and KCCI participating in the selection process but, rather, in their selecting the Board members.

We conclude *Gumbhir* is controlling on this issue. In the present case, as in *Gumbhir*, the challenged statute is an unlawful

delegation of legislative authority to a private entity. We therefore hold that the provisions of K.S.A. 44-555b, providing for the appointment of Board members, violates Article 2, § 1 of the Kansas Constitution and thus is a constitutionally impermissible delegation of legislative authority.

Since we have held the above provisions of K.S.A. 44-555b to be unconstitutional, we must determine what effect our holding has on the remaining provisions of the statute and the Act.

The Act contains a severability clause. K.S.A. 44-574(b) provides:

"If any provision or clause of this act or application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable."

In *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1023, 850 P.2d 773 (1993), we stated the test to be applied:

" 'Whether the court may sever an unconstitutional provision from a statute and leave the remainder in force and effect depends on the intent of the legislature. If from examination of a statute it can be said that the act would have been passed without the objectional portion and if the statute would operate effectively to carry out the intention of the legislature with such portion stricken, the remainder of the valid law will stand. Whether the legislature had provided for a severability clause is of no importance. This court will assume severability if the unconstitutional part can be severed without doing violence to legislative intent.' " (Quoting *Felten Truck Line v. State Board of Tax Appeals*, 183 Kan. 287, 300, 327 P.2d 836 [1958].)

We further quoted *State, ex rel., v. Consumers Warehouse Market*, 185 Kan. 363, 372, 343 P.2d 234 (1959):

" 'The rule is stated very clearly in the early case of *Central Branch U.P.R. Co. v. Atchison, T. & S.F.R. Co.*, 28 Kan. °453, in which it was held:
" 'While it is undoubtedly true that a statute may be constitutional in one part, and unconstitutional in another, yet this rule obtains only where the two parts are separate and independent; and where they are so related that the latter is a condition of, a compensation for, or an inducement to, the former, or where it is obvious that the legislature, having respect to opposing rights and interests, would not have enacted one but for the other, then the unconstitutionality of the latter avoids the entire statute.' " (Syl. 1.)" 252 Kan. at 1023-24.

Here, the provisions of K.S.A. 44-555b for selecting the Board members are obviously not separate and independent from the

remaining provisions of the statute. These provisions are the heart of the statute, and without them the statute is rendered inoperative and the intent of the legislature cannot be carried out. Thus, the provisions of K.S.A. 44-555b are not severable, and the statute is invalid. Nor is K.S.A. 44-555b separate and independent from K.S.A. 44-556. The latter provides for judicial review of the actions of the Board. The legislature would not have enacted the latter but for the former. The same is true of K.S.A. 44-551, since it provides for review of the administrative law judge's actions by the Board. Notwithstanding the severability clause, we conclude that K.S.A. 44-551 and K.S.A. 44-556 are not severable from K.S.A. 44-555b, and for that reason K.S.A. 44-551 and K.S.A. 44-556 are also invalid.

This, however, does not end our inquiry. The 1993 amendments to K.S.A. 1992 Supp. 44-551 and K.S.A. 1992 Supp. 44-556 repealed the original statutes and provided a substitute review procedure for actions of the administrative law judges and the Board. In *City of Kansas City v. Robb*, 164 Kan. 577, 190 P.2d 398 (1948), this court stated the general rule applicable in such a situation:

" 'So where an act expressly repealing another act and providing a substitute therefor is found to be invalid, the repealing clause must also be held to be invalid, unless it shall appear that the legislature would have passed the repealing clause even if it had not provided a substitute for the act repealed.' " 164 Kan. at 579 (quoting 59 C.J. 940).

At issue in *Robb* was the constitutionality of G.S. 1935, 13-1018*l* (1939 Supp.), as amended. We held the attempted amendment to 13-1018*l* was unconstitutional and invalid. We then concluded that the legislature would not have passed the repealing clause if it had not provided the substitute for the statute repealed. The court then held: "It follows that the repealing provision must fall along with 13-1018*l*, as amended by Laws of 1941, chapter 122, section 11. This leaves section 13-1018*l* still in force as it existed prior to the attempted amendment." 164 Kan. at 580.

In *State ex rel. Stephan v. Thiessen*, 228 Kan. 136, 144, 612 P.2d 172 (1980), we considered what effect our holding HB 3129 (L. 1978, ch. 323) invalid had on the original section it amended:

"The statutes repealed by HB 3129 were integral parts of the Kansas law enforcement training center program. The bill provided substitute provisions therefor.

"In *Topeka Cemetery Ass'n v. Schnellbacher*, 218 Kan. 39, 542 P.2d 278 (1975), this court considered the effect of an act, later held unconstitutional, which purported to amend and repeal existing statutes. The court approved and applied the following statement from *City of Kansas City v. Robb*, 164 Kan. 577, Syl. ¶ 2, 190 P.2d 398 (1948):

" 'Where a legislative act expressly repealing an existing statute, and providing a substitute therefor, is invalid, the repealing clause is also invalid unless it appears that the legislature would have passed the repealing clause even if it had not provided a substitute for the statute repealed.' " p. 45.

"The changes made by HB 3129, relative to the Kansas law enforcement training center, deal primarily with its funding. We cannot conclude that the legislature would have passed the repealing clauses if it had not provided substitutes for such statutes. Under such circumstances, the repealing clauses are also invalid."

In the present case, there is no question that the legislature would not have repealed K.S.A. 1992 Supp. 44-551 and 44-556 if it had not provided a substitute for the repealed statutes. Thus, it follows that the repeal of K.S.A. 1992 Supp. 44-551 and 44-556 is invalid, and these two statutes are still in full force and effect as they existed prior to the attempted 1993 amendments. As a result of this determination, we conclude that the remaining provisions of the Workers Compensation Act can effectively carry out the intention of the legislature and are constitutionally sound. Therefore, all other provisions of the Act shall remain in effect except that any reference to the Board shall be of no force and shall be disregarded.

Since we have determined that the challenged statutes are invalid, it is not necessary to consider the other constitutional questions raised by the petitioners.

In accordance with the foregoing opinion, the writ of mandamus is granted. The petitioners are entitled to judgment ousting the members of the Workers Compensation Board and dissolving the Board. We further hold that upon the filing of this opinion, the positions of the members of the Board are declared to be vacant, and the power and authority of the Board is declared to be invalid and shall no longer be exercised under the Workers

Compensation Act. It is the further holding of the court that any decisions and actions of the Board which are final and in which the time to appeal has lapsed prior to the filing of this opinion are declared lawful, valid, and binding upon the respective parties. Those claims presently pending before the Board or on appeal to the Court of Appeals are to be transferred to the appropriate district court for determination consistent with this opinion.

SIX, J., concurring: My concurrence focuses on syllabus ¶ 1 of the majority opinion. A syllabus is designed to represent "a brief statement . . . of the points decided in the case." K.S.A. 20-111. The points of law "shall be confined to those questions necessarily arising from the facts in the case." K.S.A. 60-2106(b).

The language in the majority's syllabus ¶ 1 is too broad. Syllabus ¶ 1 should read: "The legislative power of this state is vested in the legislature, and the delegation of an absolute power of appointment of the members of the Workers Compensation Board under K.S.A. 44-555b(e) and (f) and K.S.A. 44-556 to a private group or association is constitutionally impermissible."

When we embark in constitutional waters, we should place a firm grip on the language tiller so that the opinion stays close to shore. The majority's broad language in syllabus ¶ 1 conflicts with the court's opinion in *Marks v. Frantz*, 179 Kan. 638, 298 P.2d 316 (1956) (upholding a statute in which the optometric association, a private organization, exclusively selected the names submitted to the governor, who then appointed the three-person board of examiners).

The body of the majority opinion, with which I agree, states: "In the present case, the appointments are absolute. We are not dealing with the legislature's delegating the authority to recommend or nominate but, rather, with the delegation of power to appoint members of the commission." 256 Kan. at 802.

Future constitutional issues involving legislative action will come to this court for resolution. Our language should reflect a disposition of issues arising from the facts in the case before us. We are deciding, in the instant case, that K.S.A. 44-551, 44-555b(e) and (f), and 44-556 are unconstitutional. The majority opinion acknowledges the narrow path we walk between *Marks*

and *Gumbhir v. Kansas State Board of Pharmacy*, 228 Kan. 579, 618 P.2d 837 (1980), by observing:

"The concept of utilizing qualified Board members experienced in the workers compensation field has merit. *We do not find that a private organization cannot participate in the selection process. The power of nomination may be exercised by a private organization. In* Marks, *the recommendations were made by a private organization, the Kansas Optometric Association, with the final selection made by the governor.* The fatal flaw in K.S.A. 44-555b is not in the AFL-CIO and KCCI participating in the selection process but, rather, in their selecting the Board members." (Emphasis added.) 256 Kan. at 802.

The points decided in the instant opinion should not send anticipatory unconstitutional signals beyond the perimeters of the opinion, as defined by the facts creating the issues presented.